**In re ALL SEASON'S KITCHEN, INC., Debtor.**

**ALL SEASON'S KITCHEN, INC., Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Valley Bank, Defendant.**

**Bankruptcy No. 91–10785.**
**Adv. No. 92–1015.**

United States Bankruptcy Court, D. Vermont.

Sept. 28, 1992.

**392**

D.L. Leahy, Obuchowski & Reis, Bethel, Vt., for debtor, plaintiff All Season's Kitchen, Inc.

F.H. Olmstead, Sachs & Desmeules, Norwich, Vt., for defendant FDIC.

## MEMORANDUM OF DECISION ON JURISDICTION TO DETERMINE DEBTOR'S COMPLAINT

FRANCIS G. CONRAD, Bankruptcy Judge.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

FDIC moves[1] to dismiss Debtor's complaint attacking the validity of its lien, arguing that the Financial Institutions Reform Recovery Enforcement Act of 1989 (FIRREA) divests us of subject matter jurisdiction to decide whether FDIC, as receiver of Valley Bank, has a properly perfected security interest in Debtor's property. We will deny FDIC's motion, because, despite very recent contrary authority, we believe that we applied the proper analysis in our own very recent holding in *Purcell v. FDIC (In re Purcell)*, 141 B.R. 480 (Bkrtcy.D.Vt. 1992).

The facts are not in dispute. Valley Bank loaned Debtor $110,000 on June 11, 1987. The blanket security agreement provided that all Debtor's assets would be collateral for the loan. Valley Bank attempted to perfect its security interest by the filing, on July 2, 1987, of Uniform Commercial Code Form UCC–1 Financing Statements with the Vermont Secretary of State and the Thetford Town Clerk's office.

The Vermont Commissioner of Banking, Insurance and Securities declared Valley Bank insolvent on Sept. 13, 1991, and appointed FDIC as receiver. FDIC thereupon succeeded to "all rights, titles, powers, and privileges ... with respect to the institution and the assets of the institution...." 12 U.S.C. § 1821(d)(2)(A)(i).

Debtor filed its Chapter 11 Petition on Oct. 31, 1991, and commenced this adversary proceeding by filing a "Complaint to Determine the Nature, Validity and Extent of Lien" on Jan. 17, 1992.

Debtor argues that the manner in which the Form UCC–1 Financing Statements were executed was seriously misleading, resulting in inadequate notice of Valley Bank's interest in Debtor's property. The Financing Statements were executed, Debtor says, by two persons individually, with no reference to their corporate positions or to their authority to sign on behalf of Debtor. The result, Debtor argues, is that the Financing Statements are insufficient under 9A Vt.Stat.Ann. § 9–402(1), and thus failed to perfect Valley Bank's lien.

FDIC moved to dismiss Debtor's Complaint on March 9, 1992, on the grounds that Debtor had failed to file a timely claim with FDIC under the administrative claims determination procedures established by FIRREA. 12 U.S.C. § 1821(d)(3), *et seq.* FDIC argues that Debtor's failure to exhaust its administrative remedies under FIRREA bars further administrative or judicial proceedings, 12 U.S.C. § 1821(d)(5)(C)(i), and leaves this Court with no subject matter jurisdiction under 12 U.S.C. § 1821(d)(13)(D). The only matter presently before us is FDIC's motion to dismiss Debtor's Complaint. Accordingly, we express no opinion on the merits of Debtor's complaint.

### THE JURISDICTIONAL DILEMMA

As we noted in *Purcell*,

---

**1.** Our subject matter jurisdiction over this controversy arises under 28·U.S.C. § 1334(b) and the General Reference to the Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 U.S.C. §§ 157(b)(2)(A), (B), and (K). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52, as made applicable by F.R.Bkrtcy.P. 7052.

Congress "enacted FIRREA as a response to the crisis in the savings and loan industry that has commanded so much public attention in recent years." *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 388 (3rd Cir.1991). FIRREA "provides an administrative scheme for adjudicating claims ... *against* the institution for which the [FDIC] has become receiver." *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 627 (2d Cir.1991) (emphasis added). The Second Circuit in *Elman* described the broad outline of FIRREA's claims handling procedure:

> As receiver, the [FDIC] has the power to disallow *"any claim by a creditor* or claim of security, *preference,* or priority which is not proved to the satisfaction of the [FDIC]." *See* 12 USC § 1821(d)(5)(D). This decision generally must be made within six months of the making of the claim. *See id.* § 1821(d)(5)(A). If the claim is disallowed by the [FDIC], the claimant may request an administrative review of that decision, or file "a suit on such claim" in federal district court. *See id.* § 1821(d)(6). ... Until such time as the claim is disallowed by the [FDIC], "no court shall have jurisdiction over ... any claim or action for payment

from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver." 12 USC § 1821(d)(13)(D)(i).

*Id.* (Emphasis added.)

*Purcell, supra,* 141 B.R. at 482.

Our Memorandum of Decision in *Purcell* addressed in detail some aspects of FDIC's theory that FIRREA strips us of jurisdiction to determine FDIC's claims against a debtor in Bankruptcy. The Debtor here is in the same double bind that we found to exist in *Purcell.* Accordingly, we believe that the result of *Purcell* and most of its reasoning applies here, requiring denial of FDIC's motion. In addition, we will supplement and extend the analysis of *Purcell,* because we believe that the new legal theory being advanced by FDIC and RTC in Bankruptcy Courts across the country threatens the efficient functioning of the federal Bankruptcy system.[2]

When the jurisdiction-limiting provisions of § 1821(d)(13)(D) are read with an eye blinded to the rest of FIRREA's language and structure, a two-fold dilemma arises for debtors and Bankruptcy Court Judges.

---

**2.** We noted in *Purcell* that

> FDIC, frequently a creditor in bankruptcy proceedings, has never, in any proceeding over which we have presided, advanced this novel theory that we have no original subject matter jurisdiction of its claims against a debtor in Bankruptcy.

*Purcell, supra,* at 141 B.R. at 484. The novelty is wearing off. The matter *sub judice* marks the second time FDIC has advanced this theory within a matter of weeks in the small District of Vermont. Nationwide, *Purcell* was one of three cases dealing with this issue which were handed down within days of each other. *Amsave Credit Corp. v. Resolution Trust Corporation (In re Matter of American Mortgage and Investment Services, Inc.),* 141 B.R. 578 (Bkrtcy.D.N.J.1992), was entered June 26, 1992. Both *Purcell* and *Desmond v. Yiakas (In re Charles Yiakas),* Adv. Pro. No. A91–1491, *slip op.* (Bkrtcy.D.Mass.) were entered on July 7, 1992. In the days that followed *Purcell's* release, the Bankruptcy Judge's grapevine has buzzed with news of the same theory being advanced in Texas and in California. Thus, this novel and, we believe, dangerous theory has exploded onto the scene, and has now literally been advanced from the Canadian

border to the Mexican border and from coast to coast. This circumstance, especially when we contrast the large volume of cases conceding lack of jurisdiction over claims *against* FDIC with the paucity of cases even addressing the issue of jurisdiction over claims *by* FDIC against others, see footnote 13, *infra,* persuades us that we are witnessing a regulatory campaign to change the law.

Moreover, this new legal strategy represents a departure from the position FDIC has taken in the past. In *Matter of NNLC Corp.,* 136 B.R. 611 (Bkrtcy.D.Conn.1992), the Chapter 7 Trustee commenced an adversary proceeding to (a) recover a $20,625 preferential payment, and (b) to avoid FDIC's security interest in Debtor's personalty, on the ground that the description of the collateral was defective. *Id.,* at 612. FDIC there argued that only the preference was subject to FIRREA's administrative claims determination process, and sought to go forward in the Bankruptcy Court with the challenge to its security interest. *Id.,* at 614. We see no principled distinction between *NNLC* and the matter *sub judice,* which involves a similar challenge to the validity of FDIC's security interest. The only difference is FDIC's legal theory.

The first is that debtors have no forum in which to contest claims made by FDIC against them. The second is that a Bankruptcy Court has no jurisdiction even to allow or disallow a claim made by FDIC or RTC as receivers for a failed institution against any debtor in the land. This problem impacts more than just the debtor, especially in a reorganization case, because it threatens to vitiate the interests of other creditors, and hamstring the debtor's rehabilitation. We believe that both these results follow ineluctably from FDIC's position on the scope of FIRREA's jurisdictional limits. Section 1821(d)(13)(D) provides:

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, *or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver;* or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

(Emphasis added.) It is the absolutely unbounded sweep of the underlined portion of the statute that is the source of our distress. The other provisions clearly deal with "claims" which are against FDIC, and are thus subject to FIRREA's administrative claims determination process in the first instance, with a subsequent opportunity for judicial review. *Purcell, supra,* 141 B.R. at 485. FDIC's construction of the underlined clause, however, makes its secured claim against the Debtor the asset over which we have no jurisdiction. We concede that FDIC's position, if we ignored the rest of FIRREA's provisions, would be the most likely reading of the clause. The necessary consequence of concluding that an FDIC claim against a debtor in Bankruptcy is an "asset" within the meaning of § 1821(d)(13)(D), however, is that a Bankruptcy Court has no jurisdiction even to allow or disallow a claim by FDIC. This would result, if *Purcell* is correct that only claims *against* FDIC are subject to FIRREA's administrative determination process, in a Bankruptcy gridlock of mammoth

proportions, on the one hand, or, if *Purcell* is in error, in a systematic and constitutionally suspect discrimination against those persons against whom FDIC has claims.

■ In the discussion that follows, we will review briefly the analysis of *Purcell,* supplement it with an examination of the legislative history and the Congressional response to the Supreme Court's opinion in *Coit Independence Joint Venture v. FSLIC,* 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989), and then critique two recent decisions in which Bankruptcy Courts declined to exercise their jurisdiction in situations similar to the matter *sub judice.* Based upon that review, we hold that the proper analysis for Courts to use when confronted with a statute purporting to restrict their jurisdiction over matters submitted for an initial administrative determination, is to first ascertain whether Congress intended to limit jurisdiction over the matter *sub judice,* and then to determine whether the alternative administrative remedies are adequate. If a Court concludes that the answer to either inquiry is in the negative, then it should decline to withhold the exercise of its jurisdiction.

## THE HOLDING OF *PURCELL*

We refused in *Purcell* to apply § 1821(d)(13)(D) blindly, recognizing that it "do[es] not exist in isolation, but [is] embedded within a complex statutory framework." *Coit, supra,* 489 U.S. at 573, 109 S.Ct. at 1369, 103 L.Ed.2d at 615. We held on three alternative grounds that we do have jurisdiction over a debtor's complaint to determine the nature, extent, and validity of a lien held by FDIC as receiver of a failed institution. *Purcell, supra,* 141 B.R. at 485–86. First, we construed the limits on our jurisdiction to be coterminous with the class of claims subject to FIRREA's administrative claims determination process. The first step to this holding was our conclusion that

a "claim" under FIRREA means an obligation owed by the failed institution, and not an obligation owing to it. Thus, Debtor's complaint to determine the validity of FDIC's lien is outside the admin-

istrative claims handling process established by FIRREA.

*Id.,* at 484. We reached this conclusion after examining the plain language [3] Congress used to define the parameters of the administrative claims determination process, and the overall statutory structure of that process,[4] following the "well settled" rule that "in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute." *Coit, supra,* 489 U.S. at 573, 109 S.Ct. at 1369, 103 L.Ed.2d at 615 (*quoting Brown v. Duchesne,* 60 U.S. (19 How.) 183, 194, 15 L.Ed. 595 (1857)).

After first concluding that only claims against FDIC could be submitted to the FIRREA claims process, we then held that

the jurisdictional limits of § 1821(d)(13)(D) apply only to those claims that are, in the first instance, subject to the administrative determination provisions of FIRREA.

*Purcell, supra,* 141 B.R. at 485. Our reasons for this holding were:

1. "FDIC's construction would make any claim it had against a Debtor's estate an asset over which we would have no jurisdiction. We find no hint in the legislative history, or in the statutory language, apart from this single phrase, that Congress had any such intent." *Id.*

2. "{T}here is much in FIRREA to suggest that Congress did not, in fact, intend to bar jurisdiction over FDIC's claims against others. [Section] § 1821(d)(2)(B)(ii), which permits FDIC to 'collect all obligations and money due the institution,' and § 1821(e)(12)(A), which authorizes FDIC to 'enforce any contract ... entered into by the depository institution,' both plainly contemplate actions by FDIC to enforce its claims in the customary judicial forums. Other provisions of FIRREA, in context, and by contrast with the provisions at issue here, clearly indicate a Congressional intent that FDIC should resort in the first instance to the

*Purcell, supra,* 141 B.R. at 484. Had Congress actually intended to allow FDIC to determine the validity of its lien on a debtor's property, it is reasonable to expect that it would have (a) provided notice to liened debtors, and (b) granted FDIC explicit authority to provide the appropriate relief. *See, Coit, supra,* 489 U.S. at 574, 109 S.Ct. at 1369, 103 L.Ed.2d at 615.

3. Although we will not repeat here the analysis of *Purcell,* this footnote will briefly reiterate some of the features of the plain language we relied upon to conclude that "[r]eferences to 'claim' in the statutory guidelines for the claims determination process plainly exclude Debtor's complaint to determine the validity of the lien claimed by FDIC" on Debtor's assets. *Purcell, supra,* 141 B.R. at 483. FIRREA's administrative claims determination process begins with published "notice to the depository institution's *creditors* to present their claims, together with proof, to the receiver by a date specified." 12 U.S.C. § 1821(d)(3)(B)(i). (Emphasis added).

Before the end of the 180–day period beginning on the date any *claim against a depository institution* is filed with the [FDIC] as receiver, the [FDIC] shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim.

12 U.S.C. § 1821(d)(5)(A)(i). (Emphasis added). FDIC is expressly granted authority to "disallow any portion of any claim by *a creditor or* claim of security, preference, or priority which is not proved to the satisfaction of the [FDIC]." 12 U.S.C. § 1821(d)(5)(D)(i). (Emphasis added).

Moreover, FDIC's only authority with respect to claims that have been determined to be valid at the conclusion of the FIRREA determination process is to *"pay creditor claims."* 12 U.S.C. § 1821(d)(10) (emphasis added).

4. We discussed these structural features as follows in *Purcell:*

We believe FDIC's authority to pursue its claims against Debtor come, not from the provisions on resolution of claims against FDIC, but from unrelated grants of authority that are not accompanied by any restrictions on our subject matter jurisdiction. Two paragraphs in particular that grant authority to pursue claims are § 1821(d)(2)(B)(ii), which permits FDIC to "collect all obligations and money due the institution," and § 1821(e)(12)(A), which authorizes FDIC to "enforce any contract ... entered into by the depository institution...."

*Purcell, supra,* 141 B.R. at 484. We believe that the foregoing provisions, as well as others cited in *Purcell,* "clearly indicate a Congressional intent that FDIC should resort in the first instance to the Courts of the land to enforce its claims against others." *Id.,* at 485.

Courts of the land to enforce its claims against others." *Id.*

3. "{A}s a practical matter, such a broad interpretation ... would leave the Bankruptcy Courts powerless to conclude literally thousands of cases across the country." *Id.*

A fourth reason, which occurs to us now, is that when FDIC makes a claim against others, it has in fact already engaged in the kind of administrative deliberative processes that FIRREA was intended to provide for claims against it. *Cf. Praxis Properties, Inc. v. Colonial Savings Bank, SLA,* 947 F.2d 49, 64 (3d Cir.1991) (Administrative remedies exhausted by negotiations with RTC, despite lack of filing of formal claim).

The second alternative ground for our exercise of jurisdiction was that "even the most broadly worded proscription on the exercise of jurisdiction has exceptions," *Id.,* citing *Rosa v. Resolution Trust Corp., supra,* 938 F.2d at 400. One of the two exceptions we found applicable in *Purcell* applies here. That exception derives from the Supreme Court's opinion in *South Carolina v. Regan,* 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984). The Court there refused to apply the Anti–Injunction Act, 26 U.S.C. § 7421(a), according to its plain and unequivocal terms [5] because its

purpose and the circumstances of its enactment indicate that Congress did not intend the Act to apply to actions brought by aggrieved parties for whom it has not provided an alternative remedy.

*Regan, supra,* 465 U.S. at 378, 104 S.Ct. at 1114, 79 L.Ed.2d at 378. As noted in *Purcell,* we believe that the purpose of § 1821(d)(13)(D), the circumstances of its enactment, as well as the plain language and structure of the various provisions of FIRREA when viewed as a cohesive whole, compel the conclusion that "Congress intended to bar subject matter jurisdiction only over those claims against FDIC for which it had provided an alternative remedy." *Purcell, supra,* 141 B.R. at 486. Accordingly, here as in *Purcell,* we find that the *Regan* exception applies, giving us jurisdiction to determine Debtor's complaint.[6]

Finally, we believe our third basis for denying FDIC's motion to dismiss in *Purcell* also applies here.

It is by now a well-settled principle that "{a} Bankruptcy Court has jurisdiction to determine its jurisdiction." *In re Ellwanger,* 140 BR 891, 896 (Bkrtcy. W.D.Wash.1992). In the exercise of its "jurisdiction to determine jurisdiction [a Bankruptcy Court] 'may either have to determine the facts ... or the law.'" *In the Matter of Visioneering Construction,* 661 F.2d 119, 122 (9th Cir.1981), quoting, *United States v. United Mine Workers,* 330 US 258, 292 n. 57, 91 L.Ed. 884, 912 n. 57, 67 S.Ct. 677, 695 n. 57 (1947). The phrase of § 1821(d)(13)(D) in question divests us of jurisdiction over "any action seeking a determination of rights with respect to ... the assets of any depository institution for which the [FDIC] has been appointed receiver." Thus, we must first determine whether an asset of FDIC is in fact at issue before we can determine whether we have jurisdiction. ... Debtor's claim is precisely that FDIC has no asset.... If

---

5. The Anti–Injunction Act, 26 U.S.C. § 7421(a), provides, in pertinent part:

{N}o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

6. A second judicial exception to legislative curbs on jurisdiction, applicable in *Purcell* but not here, was also developed by the Supreme Court in response to the Anti–Injunction Act. In *Enochs v. Williams Packing & Navigation Co., Inc.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292, 296 (1962), the Supreme Court held:

{I}f it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the Act is inapplicable and ... the attempted collection may be enjoined if ... jurisdiction otherwise exists.

In *Purcell,* the Debtor's motion for summary judgment put the merits of the complaint squarely before us. FDIC's predecessor had failed to follow Vermont's statutory procedures for creating a judgment lien, creating a situation in which it was clear that there was no possibility that FDIC could prevail. That situation is not present here.

Debtor is correct, then we have jurisdiction to determine that Debtor is correct. *Purcell*, 141 B.R. at 486. *See also Hassett v. FDIC (In re CIS Corporation)*, 140 B.R. 351, 353 (S.D.N.Y.1992) (Bankruptcy Court has jurisdiction to determine whether FIRREA bars Trustee's suit to determine validity of FDIC lien).

## THE LEGISLATIVE HISTORY

The legislative history of FIRREA, we believe, confirms our statutory construction in *Purcell*, both explicitly, in clear and unequivocal language, and implicitly, by reference to the Supreme Court's opinion in *Coit, supra*. Explicit confirmation of our construction of "claim" under FIRREA as limited to claims against failed institutions comes from Congress' own description of the process it created.

> The claims determination procedure ... creates a system which ... enables the FDIC to dispose of the bulk of *claims against failed financial institutions* expeditiously and fairly.

H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess., *reprinted* in 2 1989 USCCAN 86, 215. (Emphasis added). Similarly, the report notes that the bill "establishes a claims procedure, with specific deadlines both for *creditors* and for the FDIC," and omits any reference to debtors. *Id.*, at 127. (Emphasis added.) We find not a scintilla of a suggestion that Congress intended that debtors who owe money to FDIC should have to go through the FIRREA claims determination process, nor of any intent to deprive the Bankruptcy Court of jurisdiction to determine issues arising from FDIC's claims against those debtors. Indeed, as we noted in *Purcell*, we find much in the statutory provisions to suggest

exactly the contrary. *Purcell, supra*, 141 B.R. at 485.

## THE CONGRESSIONAL RESPONSE TO "COIT"

The legislative history's description of the Congressional effort to draft FIRREA to satisfy concerns raised by the Supreme Court in *Coit* implicitly supports our holding in *Purcell*. The Supreme Court granted *certiorari* in *Coit* to resolve a conflict among lower courts over whether Congress had granted the Federal Savings and Loan Insurance Corporation (FSLIC) "exclusive authority to adjudicate the validity of creditors' state law claims against failed savings and loan associations under a FSLIC receivership." *Coit, supra*, 489 U.S. at 568, 109 S.Ct. at 1366, 103 L.Ed.2d at 609. In reaching its conclusion that Congress had not granted FSLIC such authority, the Court laid down guidelines for what Congress would have to do to constitutionally grant such exclusive adjudicative authority. Subsequently, Congress, in drafting FIRREA, created a process that it intended to be "responsive to the constitutional and statutory concerns ... outlined by the Supreme Court in *Coit....*" H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess., *reprinted* in 2 1989 USCCAN 86, 214.

The Court decided as a matter of statutory interpretation that Congress had not intended to confer exclusive adjudicatory authority on FSLIC. Thus, it did not decide the due process and Seventh Amendment challenges to the statutes as construed by the Fifth Circuit, which it reversed. The Court seemed, however, to go out of its way to note that the determination of " 'private rights' ... are at the 'core' of 'matters normally reserved to Article III courts.' " [7] *Coit, supra*, 489 U.S.

---

7. Bankruptcy Courts are creations of the legislative branch, constituted under Article I of the Constitution, not Article III. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *But see*, Covey and Walker, *Bankruptcy Judges are Judges of the Judicial Branch and Have Salary and Tenure Protection Under Article III of the United States Constitution*, 7 Bankr.Dev.J. 339 (1990). Nevertheless, it is our obligation, no less than that of any other Court in the land, to consider and resolve constitutional issues in the

day-to-day exercise of our responsibilities. 28 U.S.C. §§ 153(c), 453. We operate as a unit of the District Court, 28 U.S.C. § 151, which is an Article III Court, and exercise limited jurisdiction delegated to us by the District Court. 28 U.S.C. § 157. In exercising that jurisdiction to determine the cases that come before us, we consider widely divergent constitutional provisions. Recent examples from our own experience include: *Waterman Steamship Corporation v. Aguiar (In re Waterman Steamship Corporation)*, 141 B.R. 552 (Bkrtcy.S.D.N.Y.1992)

at 578–79, 109 S.Ct. at 1371, 103 L.Ed.2d at 619, *quoting Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 853, 106 S.Ct. 3245, 3258, 92 L.Ed.2d 675, 694 (1986).

> The Court below adopted an interpretation of the statutes … that raises serious constitutional difficulties. In our view, those statutes can and should be read to avoid these difficulties.

*Id.,* 489 U.S. at 579, 109 S.Ct. at 1371, 103 L.Ed.2d at 618.

The Supreme Court then moved on to consider FSLIC's fall-back position, the narrower argument that it had the authority to require claimants to exhaust administrative remedies before commencing suit. Two caveats apply here. First, the Court noted that its

> past cases have recognized that exhaustion of administrative remedies is required where Congress imposes an exhaustion requirement by statute. Where a statutory requirement of exhaustion is not explicit, "courts are guided by congressional intent in determining whether application of the doctrine would be consistent with the statutory scheme." Moreover, *"a court should not defer the exercise of jurisdiction under a federal statute unless it is consistent with that intent."*

*Coit, supra,* 489 U.S. at 579–80, 109 S.Ct. at 1372, 103 L.Ed.2d at 619 (emphasis added) (citations omitted). Secondly, even though a Congressional intent to require the exhaustion of administrative remedies is clearly expressed, the Court held that "{a}dministrative remedies that are inadequate need not be exhausted." *Id.,* 489 U.S. at 587, 109 S.Ct. at 1375, 103 L.Ed.2d at 623 (citations omitted). Based upon these two caveats, we hold that, when called upon to withhold jurisdiction on the

grounds that administrative remedies were not exhausted, we must conduct a two-part inquiry. First, we must determine whether Congress intended the matter *sub judice* to be subject to the administrative process. Secondly, we must determine whether the administrative remedy provided is adequate. We believe that FDIC's construction of § 1821(d)(13)(D) flies in the face of Congress' intent. Moreover, the administrative remedy which is available under its construction deprives debtors and their creditors of the statutory relief contemplated by the Bankruptcy Code, and so threatens private rights that it raises serious constitutional questions.

If we are incorrect in our divination of congressional intent, then jurisdiction should still be exercised, because the administrative remedy is inadequate for debtors against whom FDIC has claims. FIRREA fails to provide for notice to those against whom FDIC has claims that any challenges to FDIC's claims must be submitted in the first instance to FIRREA's administrative claims determination process. FIRREA requires only published "notice to the depository institution's *creditors* to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice," § 1821(d)(3)(B)(i), and mailing of "a notice similar to the notice published … to any *creditor* shown on the institution's books." § 1821(d)(3)(C). (Emphasis added). Thus, FIRREA does not require notice to those challenging FDIC's claims against them of their obligation to submit their objections to FDIC in the first instance, yet extinguishes their rights if timely challenges are not filed within the time limited in the first published notice. § 1821(d)(5)(C)(i).[8] In

---

(whether Debtor's notice to creditors afforded them due process); *Glinka v. Bank of Vermont (In re Kelton Motors, Inc.),* 130 B.R. 170 (Bkrtcy. D.Vt.1991) (heightened standard of proof in certain civil cases is embodied in the due process clause of the Constitution); *In re Kerwin–White,* 129 B.R. 375 (Bkrtcy.D.Vt.1991) (whether Chapter 12 Plan calling for surrender of a portion of creditor's property and terminating its lien on the balance was a taking in violation of the Fifth Amendment); *In re G. Heileman Brewing*

*Co., Inc.,* 128 B.R. 876 (Bkrtcy.S.D.N.Y.1991) (whether motion to reject a beer distributorship contract under the Bankruptcy Code conflicts with Oregon's right to regulate intoxicating liquors under the Twenty–First Amendment).

**8.** Section 1821(d)(5)(C)(i) provides:
{C}laims filed after the date specified in the notice published under paragraph (3)(B)(i) shall be disallowed and such disallowance shall be final.

the matter *sub judice,* FDIC failed to give Debtor notice, the bar date passed prior to the filing of Debtor's "Complaint to Determine the Nature, Validity and Extent of Lien," and FDIC unabashedly moves to dismiss for failure to file a claim.

The only exception to the provision extinguishing the rights of those who fail to file within the period set forth in the notice is § 1821(d)(5)(C)(ii), which provides:

> [Section 1821(d)(5)(C)(i) ] shall not apply with respect to any claim filed by any claimant after the date specified in the notice published under paragraph (3)(B)(i) and such claim may be considered by the receiver if—
>
> > (I) the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date; and
> >
> > (II) such claim is filed in time to permit payment of such claim.[9]

This exception is inadequate to redress the failure to require notice to those objecting to claims by FDIC against them because it does not mandate consideration of the late filing by FDIC, but merely provides that it "may be considered" in FDIC's discretion. Moreover, FIRREA appears to us to contain no grant of authority to FDIC to provide any relief to those objecting to its claims against them. FIRREA provides authority only to "pay creditor claims." § 1821(d)(10)(A). We find no authority to release property securing FDIC's claims from liens that are defective or improperly perfected. Accordingly, even if Congress can be said to have intended that those objecting to FDIC's claims against them should submit their objections to FIRREA's claims determination process, that administrative remedy is inadequate as to such debtors. Thus, exhaustion of administrative remedies is not a precondition to our exercise of jurisdiction. *Coit, supra,* 489 U.S. at 587, 109 S.Ct. at 1375, 103 L.Ed.2d at 623.

If, on the other hand, Congress intended both that only claims against FDIC be subject to the FIRREA claims process and that we have no jurisdiction over claims by the FDIC against others, then the "black hole" to which those against whom FDIC has claims are relegated is even deeper and darker than that which the Supreme rejected in *Coit, supra,* 489 U.S. at 586, 109 S.Ct. at 1375, 103 L.Ed.2d at 623. Their remedy is not merely inadequate; it is nonexistent. The Court's observation in *Coit* that "FSLIC itself is often the main creditor against the assets of a failed savings and loan association, and thus may well have an incentive" to manipulate the administrative process to maximize its own claims applies with equal measure to FDIC under FIRREA. *Id.,* 489 U.S. at 587, 109 S.Ct. at 1376, 103 L.Ed.2d at 624. FDIC's construction of FIRREA would permit FDIC to shift the costs of a public disaster to private parties, stripping them of the private rights they acquired in their business dealings with failed institutions. Singling out such parties to bear a disproportionate burden raises not only due process concerns, but equal protection concerns as well. Accordingly, we believe that we are compelled to construe FIRREA to permit our exercise of jurisdiction in order to avoid these constitutional difficulties. *Coit, supra,* 489 U.S. at 579, 109 S.Ct. at 1371, 103 L.Ed.2d at 618.

FDIC's construction also strips debtors and creditors caught up in the web of insolvency of their statutory rights under the Bankruptcy Code. No imagination is required to fathom the possibilities for mischief that would flow from a failure to exercise jurisdiction over FDIC's claims against bankruptcy debtors. Banks and savings and loans are in the business of lending people money. Non-performing loans are what cause the failure of financial institutions. Every failed lender carries in its coattails a host of borrowers who can't pay, many of whom turn to the Bankruptcy Courts for relief. Without jurisdic-

---

**9.** The statute quoted provides further evidence that Congress intended FIRREA's administrative claims determination process to apply only to claims which FDIC pays. Had Congress intended otherwise, it would have provided a remedy for FDIC's debtors who filed late claims because they didn't get timely notice.

tion to allow or disallow claims by FDIC against debtors, the whole process will grind to a catastrophic halt in a procedural gridlock, leaving debtors and other creditors mired with no possibility for relief in hundreds of cases.[10] In these circumstances, jurisdiction should be exercised despite § 1821(d)(13)(D) because "{a}dministrative remedies that are inadequate need not be exhausted." *Id.*, 489 U.S. at 587, 109 S.Ct. at 1375, 103 L.Ed.2d at 623.

The legislative history, however, is quite explicit that Congress intended to avoid, not create such difficulties. Congress specifically addressed the concerns raised by the Supreme Court in *Coit.*

> The Court noted that "serious constitutional difficulties" would be presented by the FSLIC's claims process even if it were authorized by statute, because granting even administrative judges the exclusive authority, with only limited judicial review, to adjudicate certain categories of State law claims under these circumstances may invade the domain reserved for Article III courts provided by the U.S. Constitution. Justice O'Connor in that opinion noted, however, that exhaustion could be required if an administrative procedure with clear time limits were established.

H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess., *reprinted* in 2 1989 USCCAN 86, 214–215. The expressed intent of Congress was to provide "a clear set of guidelines for claimants and for the FDIC," in order to respond to "the constitutional and statutory concerns ... outlined by the Supreme Court in *Coit.*" *Id.* The guidelines are in fact clear and unequivocal with respect to claims against FDIC. The inadequacies of the administrative remedies discussed earlier, however, establish that FIRREA contains no such clear guidelines for determination of claims by FDIC against others. Congress provided neither for notice to such persons, nor for authority to

deal with their claims. When we consider (a) that Congress' expressed intent was to provide clear guidelines for the administrative claims determination process in order to satisfy constitutional concerns raised by *Coit;* (b) that Congress did in fact provide clear guidelines for claims against FDIC; and (c) that Congress provided no guidelines whatsoever for claims by FDIC against others, we believe that we must conclude that Congress did not intend to limit our jurisdiction over FDIC's claims against a Bankruptcy debtor. Accordingly, we decline to defer the exercise of our jurisdiction with respect to such claims.

### RECENT CONTRARY AUTHORITY

Subsequent to release of our opinion in *Purcell,* on July 2, 1992, U.S. Bankruptcy Judge Carol J. Kenner released an opinion in *Desmond v. Yiakas, et al. (In re Yiakas),* Adv.Pro. No. A91–1491, *slip op.* (Bkrtcy.D.Mass. July 7, 1992), concluding that she lacked subject matter jurisdiction over the trustee's request for an order avoiding as a preferential transfer an attachment obtained by a failed institution for which FDIC was appointed receiver. Judge Kenner characterized the trustee's complaint as "an action seeking a determination of rights with respect to the assets of a depository institution for which the FDIC has been appointed receiver," within the meaning of § 1821(d)(13)(D)(i). *Id.*, at 3. FDIC argued that the trustee's failure to present his "claim" to FDIC within the time prescribed by § 1821(d)(3)(B) resulted in automatic and final disallowance of the claim. *Id.*, at 2. The trustee conceded that no claim had been timely filed, but argued that his claim was preserved by virtue of FDIC's failure to afford him notice. *Id.* Judge Kenner concluded:

> Since the Trustee has not presented his preference claim to the FDIC, he may not bring suit on that claim in this Court. The Court thus concludes that it lacks

---

**10.** With no authority to allow or disallow FDIC's claims against a bankruptcy debtor, the system falls apart. In a Chapter 7 asset case, for example, no distributions could be made to claims equal to or lower in priority than any unresolved FDIC claims. 11 U.S.C. § 726. Sim-

ilarly, in a Chapter 11 case, our inability to allow a claim by FDIC would make plan confirmation impossible. *See, e.g.,* 11 U.S.C. § 1129(a)(9). The only option available in such a situation might well be to dismiss the case under § 1112(b).

subject matter jurisdiction over the preference claim.

We believe that the analysis of *Yiakas* is wrong, that its result probably is, and that in any event it is distinguishable from the matter *sub judice*. We must agree that the trustee's action in *Yiakas*, and Debtor's complaint *sub judice*, are each "an action seeking a determination of rights with respect to the assets of a depository institution for which the FDIC has been appointed receiver." 12 U.S.C. § 1821(d)(13)(D)(i). But, as we have noted, every claim made by FDIC in a bankruptcy proceeding would also be an asset. Where jurisdictional limits created by the legislature threaten "'private rights' which are at the 'core' of 'matters normally reserved to Article III Courts,'" *Coit, supra*, 489 U.S. at 578–79, 109 S.Ct. at 1371, 103 L.Ed.2d at 618, it is not enough to ask merely whether a claim was in fact submitted to FDIC for an initial administrative determination. Rather, we must first ask whether Congress intended for the issues involved to be determined there in the first instance. If so, we must then determine whether Congress provided an adequate administrative remedy. Only if the Court first determines that Congress did intend for the particular matters to be subject to that process, and then concludes that the administrative remedy provided is adequate should the Court defer the exercise of its jurisdiction. *Coit, supra*, 489 U.S. at 580, 587, 109 S.Ct. at 1372, 1376, 103 L.Ed.2d at 619, 623.

Whether the trustee's action in *Yiakas* is among the kinds of claims eligible to participate in the process is in our view a close question. We infer from the fact that FDIC didn't send the trustee notice to file a claim, that it did not consider the trustee one of the "depository institution's creditors" entitled to notice. § 1821(d)(3)(B)(i). But FIRREA does at least give FDIC authority to disallow a claim of preference,

although it does not clearly afford such a claim an opportunity to participate in the claims determination process. Section 1821(d)(5)(D) provides:

> [FDIC] may disallow any portion of any claim by a creditor or *claim of security, preference,*[11] or priority which is not proved to the satisfaction of the receiver.

The trustee in *Yiakas* clearly has a "claim of ... preference." We suspect, however, that, given the issues previously raised, "claim of preference" should be construed to be limited to those situations in which the claimant is a creditor. An example would be a situation where the trustee seeks to recover preferential payments. We do not believe that the statutory scheme or legislative history evidence an intent to submit for administrative determination matters for which Congress provided neither notice nor authority to resolve. The only authority expressly provided for in the administrative determination process is to "pay creditor claims." 12 U.S.C. § 1821(d)(10). No authority is provided to release FDIC's liens. Thus, it is reasonable to infer, especially in light of Congress' expressed intent to provide "clear guidelines," that, if Congress had intended to require those contesting FDIC's claims against them to submit to the administrative determination process, it would have (a) clearly stated that claims by FDIC were in fact subject to the process, (b) provided for notice to FDIC's debtors, and (c) granted FDIC specific authority to deal with challenges to its claims. *See Coit, supra*, 489 U.S. at 574, 109 S.Ct. at 1369, 103 L.Ed.2d at 615.

In any event, unlike in *Yiakas*, § 1821(d)(5)(D) does not grant FDIC authority to adjudicate the matter *sub judice*, because none of its provisions apply. It is not Debtor, but FDIC, which has a "claim of security."[12] Thus, FIRREA grants

---

**11.** We assume for purposes of this discussion that the statute's use of "preference" refers to the term of art as used in bankruptcy practice under 11 U.S.C. § 547. Since that issue is not presently before, us, however, we do not decide it.

**12.** *Matter of NNLC Corp.*, 136 B.R. 611 (Bkrtcy. D.Conn.1992), provides implicit support for our understanding that "claim of security" in § 1821(d)(5)(D) refers to a creditor's claim against FDIC, and not to FDIC's claim of security against a debtor. In that case, FDIC sought to go forward in the Bankruptcy Court with the

FDIC neither the authority to adjudicate issues of the type raised by Debtor nor the authority to resolve them after adjudication. Given these circumstances, we believe Bankruptcy Court jurisdiction should be exercised in this because Congress did not intend for such matters to be subject to the administrative claims determination process, and no adequate administrative remedy is available.

The only other recent case that we have discovered on this point is *Amsave Credit Corp. v. Resolution Trust Corporation (In re Matter of American Mortgage and Investment Services, Inc.)*, 141 B.R. 578 (Bkrtcy.D.N.J.1992). *Amsave* clashes with our holding in *Purcell* that we had jurisdiction to determine whether FDIC even had an interest in the disputed property. The debtors in *Amsave* were lenders. The plaintiff, Amsave, had a perfected security interest in 34 loans in the debtors' portfolio. RTC asserted that the failed bank for which it was acting as receiver, Ensign Federal Savings Bank, had purchased those loans prepetition.

> Ensign ... entered into separate purchase and sale agreements with debtors ... to purchase mortgage obligations and retail home improvement installment obligations from debtors. The debtors agreed to hold in trust, for the benefit of Ensign ... certain documents relating to the mortgage and home improvement obligations. Prior to the bankruptcy, over a period of time, approximately 2800 loans were purchased from debtors by Ensign.... No indication of assignment or transfer of the documents was made of record. The sole basis of the RTC's alleged ownership is the RTC's assertion that these loans were among the assets transferred to it ... when it was appointed receiver....

*Id.*, at 579. Amsave filed an adversary proceeding demanding a determination that it had a valid, duly perfected lien senior to the interests of RTC and the debtors. RTC moved for summary judgment, arguing that Amsave's failure to exhaust the FIRREA administrative claims determination process deprived the Court of subject matter jurisdiction. *Id.*, at 581. Amsave's argument opposing RTC's motion was characterized by the Court as follows:

> Amsave argues that the RTC has not sufficiently shown that it has an ownership interest in the 34 contracts at issue. Amsave then concludes that since the very ownership of the assets is at issue, ... the exhaustion requirement cannot yet be invoked.

*Id.*, at 582. The Court rejected Amsave's argument, holding:

> FIRREA prohibits any court from asserting subject matter jurisdiction over any assets, *disputed or not*, in which the RTC, as conservator or receiver of a failed depository institution *claims* an ownership interest unless and until the claims procedure has been exhausted.

*Id.*, at 587 (emphasis added).

"The plain language" of a statute is the key to determining how to apply it. *Patterson v. Shumate*, — U.S. ——, ——, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519, 526 (1992). Section 1821(d)(13)(D) bars jurisdiction over

> any action seeking a determination of rights with respect to, the *assets* of any depository institution for which the Corporation has been appointed receiver....

(Emphasis added.) It does not, by its plain and unequivocal terms, bar jurisdiction over "disputed [assets] in which the [FDIC] claims an ownership interest." *Amsave, supra,* 141 B.R. at 587. "We must enforce the statute according to its terms." *Patterson, supra,* — U.S. at ——, 112 S.Ct. at 2247, 119 L.Ed.2d at 527. The plain language of the statute, as we understand it, limits our jurisdiction only if FDIC in fact has an asset. Accordingly, we believe that the Bankruptcy Court, in the exercise of its

---

Chapter 7 Trustee's challenge to its security interest at the same time it asked the Court to order the Trustee's action for recovery of a preferential payment submitted to FIRREA's administrative claims determination process. *Id.*, at 614. The Court stayed the challenge to FDIC's security interest pending the outcome of the FIRREA process to avoid "possible piecemeal claims resolution." *Id.* FDIC did not request and the Court did not order the challenge to FDIC's security interest submitted to that process.

jurisdiction to determine jurisdiction, must determine whether FDIC in fact has an asset. *Purcell, supra,* 141 B.R. at 486.

*Amsave* cites two cases for the proposition that "FIRREA's claims procedure applies, precluding ... jurisdiction, even where the failed institution's actual ownership over the asset is in dispute." *Amsave, supra,* 141 B.R. at 582. In neither case, however, was FDIC's interest in the asset in dispute. Moreover, both cases involved claims *against* the receiver, not claims *by* the receiver.[13] In *Capital Data Corp. v. Capital National Bank,* 778 F.Supp. 669 (S.D.N.Y.1991), a creditor of the failed bank was attempting to foreclose on a mortgage on the bank's property. In *Resolution Trust Corp. v. Elman,* 761 F.Supp. 245 (S.D.N.Y.1989), *aff'd.* 949 F.2d 624 (2d Cir.1991), former attorneys of a failed bank claimed an attorney's retaining liens in files relating to matters they had handled, and refused to turn the files over to RTC. Thus, unlike *Amsave,* each case involved a claim *against* the receiver, and required "a determination of rights with respect to ...

assets of [a] depository institution for which [a] receiver has been appointed." 12 U.S.C. § 1821(d)(13)(D).

Even if the statute has more ambiguity than we perceive, *Amsave* should have resolved that ambiguity in favor or exercising jurisdiction.

As a general rule, federal courts are under a "virtually unflagging obligation ... to exercise the jurisdiction given them."

*Temple of the Lost Sheep, Inc. v. Abrams,* 761 F.Supp. 237, 242 (E.D.N.Y.1989), *quoting Deakins v. Monaghan,* 484 U.S. 193, 203, 108 S.Ct. 523, 530, 98 L.Ed.2d 529, 530 (1988). Construing FIRREA to require that we must decline jurisdiction over challenges to FDIC's claims against others will, as we have earlier noted, have profoundly adverse impacts upon bankruptcy debtors as well as all the creditors also caught in the web of insolvency. In some cases, relief provided for debtors and their creditors under the Bankruptcy Code will simply not

**13.** *Amsave* cites 12 cases for the proposition that "[a]ll courts which have considered the issue have held that claimants must exhaust the administrative remedies of FIRREA before resorting to judicial review." *Amsave, supra,* 141 B.R. at 585–86. Not one of those cases, however, holds that a debtor's challenge to FDIC's claim against it is subject to FIRREA's administrative determination process. All but one clearly involve a claim for money from or to the assets of FDIC or RTC. Two of these 11 cases, *Capital Data Corp.* and *Elman,* are discussed in the text following this footnote. The remaining nine cases are *FDIC v. Shain, Schaffer & Rafanello,* 944 F.2d 129 (3d Cir.1991) (former attorneys for failed bank asserted attorneys lien on files for unpaid fees must turn them over to FDIC); *Rosa v. RTC,* 938 F.2d 383 (3d Cir.1991), *cert. den.* — U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991) (monetary claims against failed bank subject to FIRREA's exhaustion requirement); *In re Mid America Entertainment Plus, Inc.,* 135 B.R. 419 (D.Kan.1991) (Reference withdrawn to rule on whether jurisdiction existed over Debtor's complaint for specific performance or money damages and subordination of RTC's claim. Memorandum opinion did not decide the issue.); *DeCrosta v. Red Carpet Inns International, Inc.,* 767 F.Supp. 694 (E.D.Pa.1991) (slip-and-fall claim by inn guest against RTC as receiver for inn operator must exhaust FIRREA administrative process); *United States of America v. Altman,* 762 F.Supp. 139 (S.D.Miss.1991) (Third-party complaint seeking (a) to compel RTC to

pay surplus foreclosure sale proceeds to junior lienor and (b) to recover interest payments are subject to FIRREA's exhaustion requirement); *In re Parker North American,* 131 B.R. 452 (Bkrtcy.C.D.Cal.1991) (Debtor sought recovery of $4,650,249.22 in allegedly preferential payments to failed savings and loan); *Rexam Ltd. v. RTC,* 754 F.Supp. 245 (D.P.R.1990) (Plaintiff's suit on contract with failed financial institution, filed before RTC's appointment as receiver, must be stayed pending FIRREA administrative determination); *Circle Industries, Div. of Natasi–White, Inc. v. City Federal Savings Bank,* 749 F.Supp. 447, (E.D.N.Y.1990), *aff'd.* 931 F.2d 7 (2d Cir.1991) (Plaintiff's claim for $16,650,000 in compensatory and punitive damages subject to FIRREA administrative process); and *Tuxedo Beach Club v. City Federal Savings Bank,* 737 F.Supp. 18 (D.N.J.1990) (RTC entitled to 180–day stay to process plaintiff's breach of contract claim under FIRREA process);

The one case which did not clearly involve a claim for payment from FDIC or RTC or a claim to their assets was *Praxis Properties, Inc. v. Colonial Savings Bank, S.L.A.,* 947 F.2d 49 (3d Cir.1991). Little detail is provided about the nature of plaintiff's "action ... to enforce its putative right to obtain [a] release" of RTC's mortgage on plaintiff's property. *Id.,* at 52. The language used by the Court in discussing FIRREA's exhaustion of administrative remedies requirement, however, is consistent with our construction of the statutes. *Id.,* at 62–63.

be available. The "virtually unflagging obligation" to exercise jurisdiction which prevails as a general rule becomes even more pronounced in at least two situations. Where, as here, absence of jurisdiction of the Federal Courts would "wholly deprive [a litigant] of a meaningful and adequate means of vindicating its statutory rights," there comes into play

> the familiar proposition that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review."

*Board of Governors v. MCorp Financial, Inc.,* —— U.S. ——, ——, 112 S.Ct. 459, 466, 116 L.Ed.2d 358, 370 (1992), *quoting Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681, 687 (1967). And when, as here, administrative processes are interposed to the exercise of a constitutional right to a judicial determination of " 'private rights' ... at the 'core' of 'matters normally reserved to Article III courts,' " even more than "clear and convincing" legislative intent is required. The administrative remedies must be adequate. *Coit, supra,* 489 U.S. at 579–80, 109 S.Ct. at 1375, 103 L.Ed.2d at 623.

We believe that both *Yiakas* and *Amsave* erred by failing to consider whether Congress (a) intended to require debtors challenging FDIC's claims against them to submit to the administrative claims determination process, and (b) provided adequate administrative remedies. Accordingly, we decline to rely on them for guidance in the matter *sub judice.* We find no "clear and convincing evidence" that Congress intended us to decline jurisdiction over FDIC claims against debtors, and hold that the administrative remedies available to such debtors are inadequate. Accordingly, FDIC's motion to dismiss will be denied.

Counsel for Debtor shall submit an Order consistent with the views expressed in this opinion.