**In re Maxine B. PURCELL, Debtor.**

**Maxine B. PURCELL, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Valley Bank, Defendant.**

Bankruptcy No. 91–10015.
Adv. No. 92–1015.

United States Bankruptcy Court,
D. Vermont.

July 2, 1992.

F.H. Olmstead, of Sachs & Desmeules, Norwich, Vt., for F.D.I.C.

D.L. Leahy, and Raymond Obuchowski, of Obuchowski & Reis, Bethel, Vt., for Maxine B. Purcell.

## MEMORANDUM OF DECISION ON FDIC MOTION TO DISMISS FOR LACK OF JURISDICTION

FRANCIS G. CONRAD, Bankruptcy Judge.

This matter presents [1] the novel issue of whether the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) divests us of subject matter jurisdiction to decide whether the FDIC, as receiver of Valley Bank, has a valid lien on Debtor's property. This adversary proceeding was commenced by Debtor, who filed a complaint to determine the nature, validity, and extent of a lien FDIC claims under a Judgment Order recorded twice in the land records of the town where Debtor's real property is located. Debtor seeks to escape the apparent lien in two ways. First, Debtor argues that both recordings lack a certification that Vermont statutory law requires to create a valid lien. Second, Debtor argues that the latest of the two recordings is a preference and should be

avoided. FDIC responded by moving to dismiss the complaint for lack of subject matter jurisdiction. Debtor then moved for summary judgment on the original complaint. We will deny FDIC's motion to dismiss because we hold that FDIC is attempting to use FIRREA as a sword when Congress intended it only as a shield. We will grant Debtor's motion for summary judgment because we find that, under Vermont statutory law, no valid lien was created by either recording. Debtor's motion for summary judgment on the preference issue will be denied, because no evidence is before us to establish the elements of preference under 11 U.S.C. § 541(b).

## FACTS

The facts are not in dispute. Valley Bank's interest in Debtor's property arose when, on June 29, 1990, Debtor, as mortgagor, executed a mortgage deed on property in the Town of Hartford to Valley Bank, as mortgagee, to secure repayment of a $696,700 loan.[2]

On July 19, 1991, after Debtor defaulted on the loan, Valley Bank obtained a Judgment Order. An unauthenticated copy of the Judgment Order was recorded in the Hartford Land Records on July 23, 1991. The Vermont Commissioner of Banking, Insurance and Securities declared Valley Bank insolvent on September 13, 1991, and appointed FDIC as receiver. As Valley Bank's receiver, FDIC succeeded to "all rights, titles, powers, and privileges ... with respect to the institution and the assets of the institution...." 12 U.S.C. § 1821(d)(2)(A)(i). A second copy of the Judgment Order was recorded in the Hartford Land Records on November 19, 1991, after FDIC became receiver for Valley Bank. Unlike the first recording, this copy did contain the certification of a clerk of the Windsor County Superior Court authen-

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the General Reference to the Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 U.S.C. §§ 157(b)(2)(A), (B), (F), and (K). This Memorandum of Decision constitutes findings

of fact and conclusions of law under F.R.Civ.P. 52, as made applicable by F.R.Bkrtcy.P. 7052.

2. Whether the mortgage constitutes a valid lien upon Debtor's property is not an issue before us, because the Judgment Order at issue is for money only, and is not a judgment of foreclosure.

ticating it as "a true photocopy of the original." Neither recording, however, contained a certification of the date when the Judgment Order became final.

Debtor's Chapter 11 Petition was filed on January 7, 1992, less than 90 days after the second copy of the Judgment Order was recorded. Debtor filed the complaint commencing this adversary proceeding against FDIC, as receiver for Valley Bank, on February 10, 1992. FDIC moved, on March 26, 1992, to dismiss Debtor's complaint for lack of subject matter jurisdiction under F.R.Civ.P. 12(b)(1), made applicable to this proceeding by F.R.Bkrtcy.P. 7012(b). FDIC argues in its motion that Debtor's failure to first exhaust the administrative process Congress created to deal with claims against failed financial institutions, 12 U.S.C. § 1821(d)(3), *et seq.*, leaves us without jurisdiction to determine the validity of the lien FDIC claims under the twice recorded Judgment Order. 12 U.S.C. § 1821(d)(13)(D). FDIC has not addressed the merits of Debtor's argument that the defects in recording bar creation of a valid lien. Debtor, on April 3, 1992, filed an objection to FDIC's motion to dismiss, arguing that the FDIC is trying to herd Debtor into an administrative process created by Congress to resolve claims *against* failed institutions, not claims *by* failed institutions against others. Simultaneously, Debtor moved for summary judgment on the complaint.

## MOTION TO DISMISS

■ We first consider FDIC's motion to dismiss, as we must, because it challenges our subject matter jurisdiction to determine Plaintiff's complaint.

Where, as here, the defendant moves for dismissal under Rule 12(b)(1), Fed.R.Civ. P., ... "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined."

*Rhulen Agency, Inc. v. Alabama Insurance Guaranty Association*, 896 F.2d 674, 678 (2d Cir.1990), *quoting* 5 C. Wright and A. Miller, *Federal Practice and Procedure*, § 1350, p. 548 (1969).

Congress "enacted FIRREA as a response to the crisis in the savings and loan industry that has commanded so much public attention in recent years." *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 388 (3rd Cir.1991). FIRREA "provides an administrative scheme for adjudicating claims ... *against* the institution for which the [FDIC] has become receiver." *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 627 (2d Cir.1991) (emphasis added). The Second Circuit in *Elman* described the broad outline of FIRREA's claims handling procedure:

As receiver, the [FDIC] has the power to disallow *"any claim by a creditor* or claim of security, *preference*, or priority which is not proved to the satisfaction of the [FDIC]." *See* 12 USC § 1821(d)(5)(D). This decision generally must be made within six months of the making of the claim. *See id.* § 1821(d)(5)(A). If the claim is disallowed by the [FDIC], the claimant may request an administrative review of that decision, or file "a suit on such claim" in federal district court. *See id.* § 1821(d)(6). We have confirmed recently that the statute means just what it says, and, accordingly, that a claimant must first present its case to the [FDIC] under the administrative procedures erected by FIRREA before seeking relief in the federal courts. *See Circle Industries, Division of Nastasi–White, Inc. v. City Federal Savings Bank*, 931 F.2d 7, 8 (2d Cir.1991). Until such time as the claim is disallowed by the [FDIC], "no court shall have jurisdiction over ... any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver." 12 USC § 1821(d)(13)(D)(i).

*Id.* (Emphasis added). In *Circle Industries*, the Second Circuit, in a *per curiam* opinion without discussion of the legal issues, affirmed District Judge Spatt's deci-

sion dismissing the complaint of a claimant who failed to exhaust the administrative remedies provided by FIRREA, "substantially for the reasons stated by Judge Spatt in his opinion." Judge Spatt's opinion, after an extensive review of FIRREA and the circumstances leading to its enactment, concluded:

> As is clearly indicated in the legislative history of FIRREA, Congress intended that a district court not have subject matter jurisdiction of state law claims asserted *against* the [FDIC] ..., until *those claims* are first presented to and adjudicated by the ... FDIC. (*See* 12 USC §§ 1821(d)(5) and (d)(13)(D)).

*Circle Industries, Division of Nastasi–White, Inc. v. City Federal Savings Bank,* 749 F.Supp. 447, 454 (E.D.N.Y.1990) (emphasis added).

■ The difficulty this matter presents is that FIRREA appears to leave Debtor's complaint to determine the validity of FDIC's lien stuck in a legal limbo with no meaningful way for Debtor to seek redress. Debtor is, on the one hand, barred from participating in the administrative claims resolution process, and appears, on the other hand, at least at first blush, to be barred from seeking relief from this Court. One way to resolve this double bind would be to hold, as FDIC urges us to do, that Debtor's attempt to evade FDIC's claim against Debtor is in fact a claim against FDIC. While this approach would indeed close the gap, and make the two provisions coterminous, our review of the statutory language persuades us that "claim" as used by FIRREA refers to obligations owed *by* FDIC, not to obligations owed *to* FDIC.

We note at the outset that the cases we have reviewed uniformly assume, as is apparent from those quoted above, that the administrative scheme created by FIRREA is for claims against FDIC, not for claims by FDIC against others. This conclusion necessarily arises, we believe, from the statutory language. "FIRREA itself does not define or limit the meaning of the term 'claim' (*see* 12 USC § 1813), although the

word 'claim' is used broadly in FIRREA." *Circle Industries, supra,* 749 F.Supp. at 452. FIRREA provides a general grant of authority to FDIC "as receiver, [to] determine *claims* in accordance with the requirements of [§ 1821(d)]...." 12 U.S.C. § 1821(d)(3) (emphasis added). References to "claim" in the statutory guidelines for the claims determination process plainly exclude Debtor's complaint to determine the validity of the lien claimed by FDIC. The process begins with published "notice to the depository institution's *creditors* to present their claims, together with proof, to the receiver by a date specified," § 1821(d)(3)(B)(i), and mailing of "a notice similar to the notice published ... to any *creditor* shown on the institution's books," § 1821(d)(3)(C). (Emphasis added).

> Before the end of the 180–day period beginning on the date any *claim against a depository institution* is filed with the [FDIC] as receiver, the [FDIC] shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim.

§ 1821(d)(5) (emphasis added). Authority to actually allow, on the one hand, or disallow, on the other, is provided in two different paragraphs.

> The [FDIC] shall allow any claim received on or before the date specified in the notice published under paragraph (3)(B)(i) by the [FDIC] from any claimant which is proved to the satisfaction of [FDIC].

§ 1821(d)(5)(B). Although this paragraph is not expressly limited to claims *against* FDIC, the reference to (3)(B)(i) makes clear that such a limitation was in fact intended. The paragraph granting FDIC authority to disallow claims is expressly limited.

> The [FDIC] may disallow any portion of any claim by *a creditor* or claim of security, preference, or priority which is not proved to the satisfaction of the [FDIC].[3]

§ 1821(d)(5)(D) (emphasis added).

"No court may review the [FDIC's] determination pursuant to [§ 1821(d)(5)(D)]

---

3. We note that this provision grants to FDIC the

authority to "disallow any ... claim of ... pref-

to disallow a claim." § 1821(d)(5)(E). Rather, holders of disallowed claims are given the option to seek an administrative review of their claims, or to file suit in the United States District Court. § 1821(d)(6). In both paragraph (6) and in paragraph (7), which covers the administrative review process, "claim" is used without such qualifying phrases as "claims against [FDIC]" or "claims of creditors." Both paragraphs must be read as so limited, however, because they deal with the later review of FDIC determinations of claims that were in fact so limited.

Other uses of "claim" in § 1821 also suggest that Congress intended it only to apply to claims against FDIC, and not to FDIC's claims against others. For example, § 1821(d)(5)(C)(ii) excepts certain late filed claims from automatic disallowance:

Clause (i) shall not apply with respect to any claim filed by any claimant after the date specified in the notice published under paragraph (3)(B)(i) and such claim may be considered by the receiver if—

(I) the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date; and

(II) such claim is filed *in time to permit payment* of such claim.

(Emphasis added.) Moreover, FDIC's only authority with respect to claims that have been determined to be valid at the conclusion of the FIRREA determination process is to *"pay creditor claims."* § 1821(d)(10) (emphasis added). We believe FDIC's authority to pursue its claims against Debtor come, not from the provisions on resolution of claims against FDIC, but from unrelated grants of authority that are not accompanied by any restrictions on our subject matter jurisdiction. Two paragraphs in particular that grant authority to pursue claims are § 1821(d)(2)(B)(ii), which permits FDIC to "collect all obligations and money due the institution," and § 1821(e)(12)(A), which authorizes FDIC to "enforce any contract

erence." As noted earlier, Debtor argues that the second recording was a preference. We choose not to decide whether, on these facts, FIRREA excepts Debtor's allegation of preference from our subject matter jurisdiction be-

... entered into by the depository institution...."

Finally, we note that the record suggests that FDIC's actual practice is at odds with its legal theory in this proceeding. Although sufficiently knowledgeable about matters relating to its claims against Debtor to record the Judgment Order for a second time, after being appointed receiver for Valley Bank, FDIC did not, so far as we can determine from the record, ever send Debtor notice to file a "claim," as required by § 1821(d)(3)(C). More generally, we note that FDIC, frequently a creditor in bankruptcy proceedings, has never, in any proceeding over which we have presided, advanced this novel theory that we have no original subject matter jurisdiction of its claims against a debtor in bankruptcy. Indeed, in the consolidated Drexel Burnham Lambert bankruptcies in the Southern District of New York, for example, jurisdiction to resolve literally hundreds of millions of dollars in claims by FDIC against those debtors was never questioned.

Accordingly, based on the usages of "claim" in the foregoing statutory provision, we conclude that a "claim" under FIRREA means an obligation owed by the failed institution, and not an obligation owing to it. Thus, Debtor's complaint to determine the validity of FDIC's lien is outside the administrative claims handling process established by FIRREA.

The provisions stripping us of subject matter jurisdiction over claims to be determined administratively in the first instance appear at first blush to cover more than just what is committed to the FIRREA claims resolution process. Section 1821(d)(13)(D) provides:

Limitation on judicial review. Except as otherwise provided in [§ 1821(d)], no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determi-

cause, at this point in the proceedings, we have been presented with no evidence on the merits from which to determine whether the second recording was preferential under 11 U.S.C. § 547(b).

nation of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver ...; or

(ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

For the reasons set forth in our prior discussion of "claim," we construe the word "claim" as used in § 1821(d)(13)(D) to refer solely to claims against FDIC, and not to claims by FDIC against others. Accordingly, our jurisdiction over Debtor's complaint to determine the validity of FDIC's lien is not barred by either the first clause of subparagraph (i) or by subparagraph (ii). FDIC, however, argues that we have been stripped of jurisdiction over this matter by the phrase in subparagraph (i) covering "any action seeking a determination of rights with respect to ... the assets of any depository institution for which the [FDIC] has been appointed receiver." We reject this construction for several reasons. First, as noted earlier in this Memorandum of Decision, FDIC's construction would make any claim it had against a Debtor's estate an asset over which we would have no jurisdiction. We find no hint in the legislative history, or in the statutory language, apart from this single phrase, that Congress had any such intent. Second, there is much in FIRREA to suggest that Congress did not, in fact, intend to bar jurisdiction over FDIC's claims against others. We earlier noted that § 1821(d)(2)(B)(ii), which permits FDIC to "collect all obligations and money due the institution," and § 1821(e)(12)(A), which authorizes FDIC to "enforce any contract ... entered into by the depository institution," both plainly contemplate actions by FDIC to enforce its claims in the customary judicial forums. Other provisions of FIRREA, in context, and by contrast with the provisions at issue here, clearly indicate a Congressional intent that FDIC should resort in the first instance to the Courts of the land to enforce its claims against others. Examples include:

—§ 1821(d)(14), which governs the statute of limitations for claims brought by FDIC;

—§ 1821(d)(17), which authorizes FDIC to recover fraudulent transfers; and,

—§§ 1821(k) and (*l* ), which authorize FDIC to bring civil actions against officers and directors of failed institutions.

Third, as a practical matter, such a broad interpretation, which we have never before encountered, would leave the Bankruptcy Courts powerless to conclude literally thousands of cases across the country. Accordingly, we hold that the jurisdictional limits of § 1821(d)(13)(D) apply only to those claims that are, in the first instance, subject to the administrative determination provisions of FIRREA. We have subject matter jurisdiction over Debtor's complaint because it is not the kind of claim which is subject to that process. Accordingly, FDIC's motion to dismiss will be denied.

■ Alternatively, we hold that even if the jurisdictional limits do apply, Debtor's complaint is excepted, leaving us with subject matter jurisdiction to determine the validity of FDIC's lien because Debtor would otherwise be without an effective remedy. The Third Circuit held, in a recent discussion of § 1821(j), a FIRREA provision unrelated to the matters at issue before us, that even the most broadly worded proscription on the exercise of jurisdiction has exceptions. Section 1821(j) provides:

(j) Limitation on court action. Except as provided in this section, no court may take any action ... to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or receiver.

Despite the broad sweep of § 1821(j), the Third Circuit expressly noted:

[W]e do not mean to be understood as saying that an order restraining or affecting [FDIC's] exercise of its powers as receiver or conservator could never issue. Indeed, courts have recognized exceptions to provisions worded even more broadly than § 1821(j).

*Rosa v. Resolution Trust Corp., supra,* 938 F.2d at 400. The two cases cited by the Third Circuit in support of its observation that even the most broadly worded

statutes may have exceptions were both United States Supreme Court cases involving the Anti–Injunction Act, 26 U.S.C. § 7421(a). That Act provides, with exceptions not relevant here, that

> no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

In both cases cited by the Third Circuit, the Supreme Court held, despite the broad sweep of the statute, that a suit to restrain collection could, in some circumstances, be maintained. The rationale of the Supreme Court was different in each case, and each rationale provides an independent justification for our exercise of jurisdiction. In *South Carolina v. Regan*, 465 U.S. 367, 378, 104 S.Ct. 1107, 1114, 79 L.Ed.2d 372, 382 (1984), the Supreme Court held that the Anti–Injunction Act's

> purpose and the circumstances of its enactment indicate that Congress did not intend the Act to apply to actions brought be aggrieved parties for whom it has not provided an alternative remedy.

We are persuaded, for the reasons set forth earlier in our discussion of the scope of "claim," as used in FIRREA, that Congress intended to bar subject matter jurisdiction only over those claims against FDIC for which it had provided an alternative remedy. Accordingly, the *Regan* exception applies, and we have jurisdiction over Debtor's claim.

The rationale of the Supreme Court's holding in *Enochs v. Williams Packing & Navigation Co., Inc.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292, 296 (1962) also applies here. In *Enochs*, the Supreme Court held:

> [I]f it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the act is inapplicable and ... the attempted collection may be enjoined if ... jurisdiction otherwise exists.

The *Enochs* exception applies here because, first, we would clearly have jurisdiction but for the existence of

§ 1821(d)(13)(D), 28 U.S.C. §§ 157, 1334, and second, as our discussion of the merits will show, there is no possibility that FDIC can prevail.

■ Before turning to the merits, however, we note one final basis upon which we rest our exercise of jurisdiction over this matter. It is by now a well-settled principle that "[a] Bankruptcy Court has jurisdiction to determine its jurisdiction." *In re Ellwanger*, 140 B.R. 891, 896 (Bkrtcy.W.D.Wash.1992). In the exercise of its "jurisdiction to determine jurisdiction [a Bankruptcy Court] 'may either have to determine the facts ... or the law.'" *In the Matter of Visioneering Construction*, 661 F.2d 119, 122 (9th Cir. 1981), *quoting, United States v. United Mine Workers*, 330 U.S. 258, 292 n. 57, 67 S.Ct. 677, 695 n. 57, 91 L.Ed. 884 (1947). The phrase of § 1821(d)(13)(D) in question divests us of jurisdiction over "any action seeking a determination of rights with respect to ... the assets of any depository institution for which the [FDIC] has been appointed receiver." Thus, we must first determine whether an asset of FDIC is in fact at issue before we can determine whether we have jurisdiction. Although this line of reasoning appears to have a certain circularity, it is only because the threshold jurisdictional issue involves the same determinations of fact and law as the ultimate issue raised by Debtor's Complaint. Debtor's claim is precisely that FDIC has no asset because defective recording of the Judgment Order rendered its claimed lien a nullity. If Debtor is correct, then we have jurisdiction to determine that Debtor is correct. Accordingly, we turn to the issues raised by Debtor's Motion for Summary Judgment.

## MOTION FOR SUMMARY JUDGMENT

■ To prevail on a motion for summary judgment, Debtor must satisfy the criteria set forth in F.R.Civ.P. 56, made applicable in Bankruptcy proceedings by F.R.Bkrtcy.P. 7056. F.R.Civ.P. 56(c) provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

See, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273–74 (1986); *Eastman Machine Company, Inc. v. United States*, 841 F.2d 469 (2d Cir.1988); *Hossman v. Spradlin*, 812 F.2d 1019, 1020 (7th Cir.1987); *Clark v. Union Mutual Life Ins. Co.*, 692 F.2d 1370, 1372 (11th Cir.1982); *United States Steel Corp. v. Darby*, 516 F.2d 961, 963 (5th Cir.1975). The primary purpose for granting a summary judgment motion is to avoid unnecessary trials where no genuine issue of material fact is in dispute. *Farries v. Stanadyne/Chicago Div.*, 832 F.2d 374, 378 (7th Cir.1987). No facts necessary to the resolution of Debtor's complaint to determine the validity of FDIC's lien are in dispute. It is clear from the record, and FDIC does not contest the fact, that neither recording of the Judgment Order contained a certification by a clerk of the Windsor Superior Court of the date when the Judgment became final. Our only task is to determine the legal effect of that omission.

Vermont's judgment lien statutes appear in Title 12, Chapter 113 of the Vermont Statutes Annotated, §§ 2901, *et seq.* Section 2901 provides:

A final judgment issued in a civil action shall constitute a lien on any real property of a judgment debtor *if recorded as provided in this chapter.*

§ 2901. (Emphasis added.) Recording requirements are found in 12 V.S.A. § 2904, which provides:

A judgment creditor may record a judgment lien at any time within eight years from the date the judgment becomes final in the town clerk's office of any town where real property of the debtor is located. *Recording shall consist of filing a copy of the judgment with date when it became final, certified by the clerk of the court issuing the judgment.* The certification shall be recorded by the town clerk in the land records.

(Emphasis added.) "The plain language of the statute requires that each of these requirements be met." *Lyndonville Savings Bank and Trust Company v. Provost, slip op.*, Orleans Superior Court Docket No. S111–87–OsC, 8 (May 27, 1988). *See also, In re Howard M. Prussack*, Case No. 88–00007, *slip op.*, Conrad, J. (Bkrtcy.D.Vt. July 19, 1989).

The July 19, 1991, Judgment Order was first recorded in the Hartford Land Records four days later, on July 23, 1991. The Vermont Rules of Civil Procedure govern State Superior Court orders. V.R.Civ.P. 1. With exceptions not relevant here, V.R.Civ.P. 62(a) provides:

[N]o execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 30 days after its entry or until the time for appeal from the judgment ... has expired.

In this case, the Judgment Order "bec[a]me final by expiration of the time for appeal." V.R.Civ.P. 62(f). An appeal from the Superior Court to the Vermont Supreme Court must be filed within 30 days of the date of entry of the Judgment Order. V.R.App.P. 4. Accordingly, we hold that the first recording, on July 23, 1991, did not create a valid lien, because at the time it was recorded it was not final as required by 12 V.S.A. §§ 2901 and 2904.

Neither recorded copy of the Judgment Order contained the "date when it became final, certified by the clerk of the court issuing the judgment," as required by § 2904. We are compelled to conclude, from the plain language of § 2901, that recording of a Judgment Order creates a lien upon the real property of the debtor "if recorded as provided in ... chapter [113]." 12 V.S.A. § 2901.

For the foregoing reasons, FDIC's Motion to Dismiss will be denied. Debtor's Motion for Summary Judgment will be granted as to the invalidity of FDIC's lien, but will be denied as to the claimed preference arising out of the second recording of the Judgment Order. Counsel for Debtor

shall submit an Order consistent with the views expressed in this Memorandum of Decision.