USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1936 FLOYD V. HENO, Plaintiff, Appellant, v. FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Robert E. Keeton, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Campbell, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Robert G. Wilson IV, with whom Robert G. Wilson III and Law ___________________ _____________________ ___ Offices of Robert G. Wilson III were on brief for appellant. _______________________________ Robert R. Pierce, with whom Russell F. Conn and Conn, __________________ _________________ _____ Kavanaugh, Rosenthal & Peisch were on brief for appellee. _____________________________ ____________________ April 22, 1994 ____________________ CYR, Circuit Judge. Plaintiff Floyd Heno appeals from CYR, Circuit Judge. _____________ a district court order dismissing claims for compensatory and injunctive relief brought against the Federal Deposit Insurance Corporation ("FDIC") under the Financial Institutions Reform and Recovery Act ("FIRREA"). In an earlier opinion, see Heno v. ___ ____ FDIC, 996 F.2d 429 (1st Cir. 1993), we affirmed the district ____ court order dismissing the claim for injunctive relief pursuant to Federal Rule of Civil Procedure 12(b)(6), but vacated its Rule 12(b)(1) order dismissing the claim for compensatory relief. Thereafter, we granted FDIC's petition for panel rehearing on the claim for compensatory relief, see Fed. R. App. P. 40, and ___ allowed further briefing, argument, and supplementation of the appellate record relating to the proper interpretation of FIRREA 1821(d), (e), 12 U.S.C. 1821(d), (e). We now withdraw our original opinion, and substitute the present opinion. I I BACKGROUND BACKGROUND __________ A. The "Claim" A. The "Claim" __________ We review a Rule 12(b)(6) dismissal de novo, crediting __ ____ all allegations in the complaint and drawing all reasonable inferences favorable to the plaintiff. Scheuer v. Rhodes, 416 _______ ______ U.S. 232, 236 (1974); Rumford Pharmacy, Inc. v. East Providence, ______________________ _______________ 970 F.2d 996, 997 (1st Cir. 1992). Similarly, a Rule 12(b)(1) dismissal is reviewed de novo where, as here, the only issue is __ ____ the legal sufficiency of undisputed jurisdictional facts. See ___ 2 Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 732 (11th Cir. _____ ______________________ 1982); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, _________ _____________________________ 891 (3d Cir. 1977). The complaint alleges that Heno sold Balcol Corporation a 104-acre tract of real property in 1986, for which Balcol gave Heno a promissory note secured by a first mortgage on the undeveloped property. In September 1987, Balcol began to develop the property, known as the Prospect Heights residential subdivision, and obtained construction financing through Home National Bank of Milford ("Bank"). Heno agreed to subordinate his first mortgage to the Bank's construction loan mortgage. In return for the release of Heno's second mortgage lien as each lot was sold, Balcol and the Bank promised to release $19,125 from the sale proceeds. By April 1990, Balcol and Prospect Heights were exper- iencing financial difficulties, and the three principal parties entered into a recapitalization agreement. Heno agreed to accept $5,000 (rather than $19,125) per lot for releasing his second mortgage lien on the next nine lots sold by Balcol. Balcol and the Bank agreed: (1) to transfer two additional lots to Heno (Lots 82 and 111), free and clear of the Bank's first mortgage liens, at the time Heno released his second mortgage lien on the ninth lot; and (2) to deposit the net proceeds from the nine lots in escrow with the Bank. The escrow monies were to be used exclusively for immediate completion of roadwork in the project andto defray Balcol's firstmortgage interest paymentsto the Bank. ________ 3 Although Balcol conveyed Lots 82 and 111 to Heno on May 2, 1990, the Bank did not release its first mortgage liens on the lots. During April and May 1990, seven of the nine original lots were sold by the Bank after Heno had released his second mortgage liens. By June 1, 1990, more than $232,000 had been deposited in escrow with the Bank pursuant to the recapitalization agreement among Heno, Balcol, and the Bank. Ultimately, the eighth and ninth lots were sold, and the net proceeds, approximating $90,000, were deposited with FDIC.1 The complaint alleges, hence we must assume, that $125,000 was to have been devoted to roadwork at the project.2 On June 1, 1990, the Bank was declared insolvent and FDIC was appointed receiver. At an unspecified later date, FDIC applied the escrow monies toward the principal due on Balcol's _________ first mortgage loan account with the Bank, contrary to the express terms of the recapitalization agreement. Heno's counsel thereafter held discussions with FDIC, and was informed by Balcol that FDIC would determine, after obtaining an appraisal of the Prospect Heights project, whether to release the Bank's first mortgage liens on Lots 82 and 111, the two additional lots at ____________________ 1The complaint does not specify the date(s) of these sales, but the proceeds were deposited with FDIC on or about October 1, 1990. 2At oral argument, Heno's counsel represented that the roadwork was never performed. 4 issue on appeal. On December 13, 1990,3 and again on February 19, 1991, Heno submitted written requests for action by FDIC, but to no avail.4 Subsequently, FDIC foreclosed on the Prospect Heights subdivision, including Lots 82 and 111. The escrow monies were neither redeposited nor applied toward the purposes agreed upon under the recapitalization agreement. On October 18, 1991, Heno initiated the present action to enjoin FDIC's sale of Lots 82 and 111 and to compel it to redeposit the escrow monies previously misapplied to Balcol's first mortgage with the Bank. The complaint demanded an equitable accounting of the escrow monies, and compensatory ____________________ 3Heno's December 13 letter specifically requested release of the Bank's first mortgage liens on Lots 82 and 111 and served "notice of [Heno's] contingent interest in [the escrow account]." The letter went on to say: Heno should receive either the lot releases or that portion of the escrow account attributable to his participation in the agreement. Under well established _____ ____ ___________ fiduciary and equitable principles, if the FDIC is not _________ ___ _________ __________ __ ___ ____ __ ___ going to honor the purposes of the escrow account, that _____ __ _____ ___ ________ __ ___ ______ _______ ____ portion of the escrow account attributable to Heno's _______ __ ___ ______ _______ ____________ __ ______ participation should be returned to him, and not used _____________ ______ __ ________ __ ___ ___ ___ ____ by the Receiver to reduce Balcol's obligation. __ ___ ________ __ ______ ________ __________ (Emphasis added.) Heno's complaint demands an equitable accounting of the escrow monies, and, accordingly, does not specify the exact amount claimed. However, were Heno to establish a repudiation of the recapitalization agreement, he could be expected to assert a claim for the difference between the $19,125 originally agreed upon, and the $5,000 he later agreed to accept under the recapitalization agreement for releas- ing his second mortgage liens on the nine lots sold by Balcol (or approximately $127,000). 4The February 19, 1991, letter outlines, among other things, the evidence relating to Heno's interest in the escrow monies and certain subdivision lots, and makes reference to additional letters not included in the appellate record. 5 relief for the loss occasioned by FDIC's refusal to release the Bank's first mortgage liens on Lots 82 and 111. FDIC moved to dismiss the claim for compensatory relief pursuant to Fed. R. Civ. 12(b)(1), and the claim for injunctive relief pursuant to Fed. R. Civ. P. 12(b)(6). The district court decided that it lacked jurisdiction to consider the claim for compensatory relief by virtue of 12 U.S.C. 1821(d)(13)(D)(i), and that injunctive relief was precluded by 12 U.S.C. 1821(j). B. The Original Panel Opinion B. The Original Panel Opinion __________________________ FIRREA 1821(d) regulates the filing, determination, and payment of "claims" against "assets" of failed financial institutions after FDIC has been appointed receiver. Subsections 1821(d)(3)(B) and (C) require FDIC to publish and mail notice of liquidation to "any creditor shown on the institution's books" and to allow at least ninety days for filing "claims." 12 U.S.C. 1821(d)(3)(B), (C). As FDIC points out, anyone with a "claim" against the assets of the failed institution must submit an administrative claim to FDIC within the prescribed statutory period. Id. 1821(d)(5)(C). "[P]articipation in the ___ administrative claims review process [is] mandatory for all parties asserting claims against failed institutions . . . ." Marquis v. FDIC, 965 F.2d 1148, 1151 (1st Cir. 1992). Failure to _______ ____ participate in the administrative claims review process (hereinafter "ACRP") is a "jurisdictional bar" to judicial review. Id.; see also 12 U.S.C. 1821(d)(13)(D); FDIC v. Shain, ___ ___ ____ ____ ______ Schaffer & Rafanello, 944 F.2d 129, 132 (3d Cir. 1991) ("Congress ____________________ 6 expressly withdrew jurisdiction from all courts over any claim to a failed bank's assets that are [sic] made outside the procedure set forth in section 1821.").5 The subsection 1821(d) bar date for filing administrative claims in the present case was September 6, 1990. Since neither letter detailing Heno's "claims" predated the bar date, see supra notes 3 and 4, the ___ _____ district court ruled that Heno could no longer file a timely administrative claim under subsection 1821(d), and that his "claims" therefore were not entitled to judicial review. Heno consistently has advanced two contentions on appeal. First, he argues that neither FIRREA 1821(j), see ___ infra note 8, nor the ACRP established under subsection 1821(d), _____ applies to "non-creditors" including Heno who assert claims to property, such as the alleged escrow account, which, though held by the failed bank, is held "in trust" for third parties and __ ____________________ 5Section 1821(d)(13)(D) provides: (D) Limitation on judicial review (D) Limitation on judicial review Except as otherwise provided in this subsection, no court shall have jurisdiction over (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or (ii) any claim relating to any act or omission of such institution or the Corporation as receiver. 12 U.S.C. 1821(d)(13)(D). 7 is not a bank "asset."6 See, e.g., Purcell v. FDIC (In re ___ ____ _______ ____ ______ Purcell), 141 B.R. 480 (Bankr. D. Vt. 1992), aff'd, 150 B.R. 111, _______ _____ 113-15 (D. Vt. 1993). Second, and in the alternative, Heno contends that his claim for compensatory relief should not have been dismissed for failure to comply with the administrative claim procedure established under subsection 1821(d). The "task of interpretation begins with the text of the statute itself, and statutory language must be accorded its ordinary meaning." Telematics Int'l, Inc. v. NEMLC Leasing ________ _______ ________________________ ______________ Corp., 967 F.2d 703, 706 (1st Cir. 1992) (interpreting FIRREA _____ 1821(j)) (emphasis added) (citations omitted). The original panel opinion rejected FDIC's contention that Heno was required to file an administrative claim before the bar date even though ______ the "claim" was grounded in a pre-receivership agreement with the ________________ Bank and remained executory and unrepudiated both at the time of FDIC's appointment and throughout the entire 90-day bar period prescribed in subsections 1821(d)(3)(B)(i) and 1821(d)(5)(C)(i). ____________________ 6At reargument, Heno urged that 1821(d)(13)(D) be ruled wholly inapplicable for this reason, suggesting that the issue is ripe for appellate review because it might affect any later district court decision as to the scope of Heno's damages remedy. We decline the invitation for two reasons. First, given FDIC's blanket concession at reargument, the "asset" issue is no longer essential to proper resolution of the question of appellate jurisdiction. Second, the district court has yet to make findings as to whether (or which) Bank records may have been lost. On remand, therefore, Heno may confront a serious problem of proof. See D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942); ___ ____________________ ____ see also 12 U.S.C. 1823(e). Thus, though the D'Oench Duhme ___ ____ ______________ document requirement is not jurisdictional, and Heno will be entitled to reasonable discovery, see generally Tuxedo Beach Club ___ _________ _________________ Corp. v. City Fed. Sav. Bank, 749 F. Supp. 635, 644 (D.N.J. _____ _____________________ 1990), he may not be able to overcome certain FDIC defenses which could obviate any issue relating to damages. 8 As our opinion pointed out, FIRREA 1821(d) prescribes a single exception to the pre-bar date filing requirement: it permits late-filed claims only if "the claimant did not receive notice of ____ __ the appointment of the receiver in time to file such claim before such date; and . . . such claim is filed in time to permit payment of such claim." 12 U.S.C. 1821(d)(5)(C)(ii). Because Heno no doubt like many others who assert claims arising out of executory contracts with a failed bank concededly had actual notice of FDIC's appointment, but held no assertable or __ provable "claim" until after the bar date, the original panel _____ opinion reasoned that the ACRP established under subsection 1821(d) rationally could not have been intended to preclude judicial review of post-receivership "claims" which arise after _____ _____ the expiration of the 90-day administrative-claim filing period. Rather, inasmuch as FDIC received two post-bar date requests from Heno that it either affirm or repudiate the alleged reaffirmation agreement within a "reasonable period following [FDIC's] appointment," see 12 U.S.C. 1821(e)(2); supra notes 3 and 4, we ___ _____ held Heno's claim for contract repudiation subject instead to the more flexible time constraints established in FIRREA 1821(e). See, e.g., Ceguerra v. Secretary of Health and Human Servs., 933 ___ ____ ________ ____________________________________ F.2d 735, 742 (9th Cir. 1991) ("[W]hen an administrative agency interprets its governing statute to require such an absurd result, we owe that interpretation no deference.")7 ____________________ 7Subsection 1821(e) provides, in pertinent part: (e) Provisions relating to contracts entered into (e) Provisions relating to contracts entered into 9 C. The Petition for Rehearing C. The Petition for Rehearing __________________________ The petition for rehearing represents that but for the fact that these claims were never considered claims based on contract repudiation, FDIC would have invoked its extant internal ______ agency manual procedures for processing such post-bar date claims (hereinafter: "internal manual procedures"). Accordingly, FDIC urged remand to permit the district court to determine whether Heno had complied with the internal manual procedures first disclosed in FDIC's petition for rehearing. At reargument, FDIC withdrew its request for remand, as unnecessary, after conceding ____________________ before appointment of conservator or receiver before appointment of conservator or receiver (1) Authority to repudiate contracts (1) Authority to repudiate contracts In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease (A) to which such institution is a party; (B) the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and (C) the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs. (2) Timing of repudiation (2) Timing of repudiation The conservator or receiver appointed for any insured depository institution in accordance with subsection (c) of this section shall determine whether or not to exercise the rights of repudiation under this subsection within a reasonable period following such appointment. 12 U.S.C. 1821(e)(1), (2). 10 that Heno's detailed letter requests to FDIC in December 1990 and February 1991, see supra notes 3 and 4, placed FDIC on notice of ___ _____ the existence and nature of Heno's post-bar date claims well within the time allotted under FDIC's internal manual procedures. II II DISCUSSION DISCUSSION __________ Given the concession that Heno's post-bar date claims were timely filed under FDIC's internal manual procedures, the one remaining question is whether judicial deference is due the FDIC interpretation of subsections 1821(d)(5)(C)(ii) and 1821(d)(13) implicit in its internal manual procedures.8 The guidelines governing deference to an administering agency's interpretation of its enabling statute are well settled: First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for ____________________ 8We need not reconsider our earlier holding that the district court lacked jurisdiction over Heno's claim for injunctive relief, a claim expressly barred by 1821(j), which provides in part: Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect __ ________ __ ______ the exercise of powers or functions of the Corporation ___ ________ __ ______ __ _________ as a conservator or a receiver. __ _ ___________ __ _ ________ 12 U.S.C. 1821(j) (emphasis added); see Telematics Int'l, 967 ___ ________________ F.2d at 707 ("holding that the district court lacks jurisdiction to enjoin FDIC when FDIC is acting pursuant to its statutory ______ powers as receiver") (emphasis added). 11 the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court deter- mines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence __ _____ __ _________ __ ___ _______ of an administrative interpretation. Rather, __ __ ______________ ______________ if the statute is silent or ambiguous with respect to a specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., ____________________ _______________________________________ 467 U.S. 837, 842-43 (1984) (emphasis added). Under the statutory interpretation implicit in its internal manual procedures, FDIC construes the pivotal statutory bar-date exception in subsection 1821(d)(5)(C)(ii) "the claimant did not receive notice of the appointment of the receiver in time to file such claim before [the bar] date" as permitting late filing even by claimants who were on notice of FDIC's appointment ____ __ _________ ___ ____ __ ______ __ ______ ___________ but could not file their claim because it did not come into existence until after the bar date prescribed in subsections 1821(d)(3)(B)(i) and 1821(d)(5)(C)(i). Although we concur in FDIC's candid assessment that its proposed interpretation is far from the most natural reading of subsection 1821(d)(5)(C)(ii) itself, we cannot say that it does not represent a "permissible" reading of an ambiguous provision viewed in the broader context of the statute as a whole under the deferential standard required by Chevron. See Chevron, 467 U.S. _______ ___ _______ at 844 (agency construction is "permissible" unless "arbitrary, capricious, or manifestly contrary to the statute") (emphasis __________ 12 added). In this vein, neither we nor the parties have found any other FIRREA provision governing agency treatment of claims that ______ _________ do not arise until more than 90 days after the claimant has notice of FDIC's appointment as receiver. Additionally, Congress has delegated to FDIC the authority to "prescribe regulations regarding the allowance or disallowance of claims by the receiver and providing for administrative determination of claims and review of such determination." 12 U.S.C. 1821(d)(4). The extant FDIC internal manual procedures applicable to Heno's claims comport with the FDIC's interpretation of subsection 1821(d)(5)(C)(ii), by explicitly dispensing with any requirement __________ intrinsic to the pre-bar date ACRP that holders of post-bar date claims establish that they had no actual or constructive notice of FDIC's appointment. Compare infra Appendix, Exhibits G _______ _____ and 4-F with Exhibit 5-K. ____ Further, FDIC advances sound policy grounds for afford- ing it an opportunity to evaluate post-bar date claims in the first instance, including contract repudiation claims that do not arise within the initial ninety-day period following notice of its appointment as receiver. For one thing, a reasonably de- signed and fairly administered post-bar date ACRP should optimize prospects for expeditious resolution of these claims against failed banks, make maximum use of FDIC's cumulative adminis- trative expertise, and minimize burdensome litigation in the federal courts. See Marquis, 965 F.2d at 1152 ("Quite plainly, ___ _______ Congress intended the ACRP to provide a streamlined method for 13 resolving most claims against failed institutions in a prompt, orderly fashion, without lengthy litigation.") (citing H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess., at 418-19 (1989)). Lastly, absent a clear signal from Congress to the contrary, we must credit an administering agency's reasoned interpretation of its enabling statute. See Chevron, 467 U.S. at 843 n.11 (noting ___ _______ that judicial deference is not dependent on a determination "that the agency construction was the only one it permissibly could ____ have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial setting"); see also FDIC v. Philadelphia Gear Corp., ___ ____ ____ _______________________ 476 U.S. 426, 439 (1986) (according Chevron deference to estab- _______ lished FDIC administrative practice, even though FDIC had not yet reduced its statutory interpretation to "specific regulation"); cf. Colorado ex rel. Colorado State Banking Bd. v. Resolution ___ _____________________________________________ __________ Trust Corp., 926 F.2d 931, 944 (10th Cir. 1991) ("[T]he RTC's ___________ expert 'judgments about the way the real world works . . . are precisely the kind that agencies are better equipped to make than the courts.'") (citation omitted). Since FDIC concedes that its treatment of Heno's administrative requests that his alleged capitalization agreement with the Bank be assumed by FDIC was tantamount to administrative review under FDIC's internal manual procedures,9 and consequent- ____________________ 9We expressly refrain from considering whether the adminis- trative "mistake" conceded by FDIC lay in its failure to notify Heno of its post-bar date ACRP within 30 days after it received the December 1990 and February 1991 letters, i.e., after the ____ dates of FDIC's "discovery" of Heno's claims, or whether Heno's 14 ly that the district court had jurisdiction to review Heno's claims, we have no occasion to determine the sufficiency of FDIC's internal manual procedures. These matters must await some future occasion when FDIC asserts a jurisdictional bar to judi- cial review under FIRREA 1821(d)(13)(D) based on a claimant's alleged failure to comply with the internal manual procedures. At the same time, however, we note that though amply invested with rulemaking authority to promulgate regulations under subsection 1821(d)(4), FDIC has not done so, nor has it taken reasonable steps to forewarn potential claimants of the existence of its internal manual procedures for filing "late" _________ claims, thus contributing indispensably to the convoluted travel of this case. Cf., e.g., Lawson v. FDIC, 3 F.3d 11, 14 (1st Cir. ___ ____ ______ ____ 1993) (noting that FDIC's "litigating style has some role in [creating] confusion" in the district courts).10 Accordingly, the FDIC internal manual procedures are appended to this opinion, see infra Appendix, to lessen the likelihood that future claim- ___ _____ ants experience a similar ordeal. The district court order dismissing appellant's claims _______________________________________________________ for compensatory relief is vacated. The case is remanded to the __________________________________ ____________________________ district court for further proceedings consistent with this _________________________________________________________________ ____________________ letters were proper administrative claims implicitly "disallowed" when FDIC failed to respond within 180 days after their receipt. 10For example, as recently as reargument, FDIC continued to urge a remand for administrative exhaustion, finally conceding its "mistake" in failing to apply its internal manual procedures to Heno's claim only when it was pressed to explain the utility of such a remand. 15 opinion. In all other respects, the district court order is _______ ______________________________________________________ affirmed. Finally, the present opinion is to be substituted for ________ _____________________________________________________ our original opinion published at 996 F.2d 429. So ordered. ______________________________________________ __________ 16 APPENDIX APPENDIX ________ EXHIBIT 1 Revised Exhibit 5-K. FORM: NOTICE TO CREDITOR TO FILE A CLAIM; CREDITOR NOT AP- PEARING IN BOOKS AND RECORDS AND/OR DISCOVERED AFTER INITIAL PUBLICATION NOTICE AND [sic] HAS BEEN SENT Use: Upon discovery of a claimant not appearing on the institution's books and records, a similar notice is to be sent within 30 days of discovery of creditor under 12 U.S.C. 1821(d)(3)(C)(ii). Use for claims which do not appear on the institution's books and are discov- ered after the appointment of the receiver and initial publication notice and letters to creditors have al- ready been sent. This form should also be utilized for claims discovered after expiration of the bar date. Complete Affidavits of Mailing, modified to indicate creditor(s) discovered after closing and initial notic- es. [DATE] [NAME OF CLAIMANT] [ADDRESS] SUBJECT: FIN - Name of Financial Institution City, State - in receivership NOTICE TO DISCOVERED CREDITOR OR CLAIMANT - PROOF OF _______________________________________________________ CLAIM _____ Dear Sir/Madam: On [date of appointment], the [name of financial institution] located at (full street address of main office] was closed by [the supervisory authority], and the Federal Deposit Insurance Corporation was appointed Receiver. Notice of the appointment of the receiver has been published as required by law. The Receiver has discovered that you may have a claim against the [name of financial institution] or the Receiver. By published notice, the Receiver has established [bar date] as the last date for filing claims (the "bar date"). Under applica- ble law, the Receiver must disallow claims which are not filed by the bar date, except the Receiver may consider a claim filed ______ after the bar date if it is shown that the claimant did not receive notice of the appointment of the receiver in time to file such claim before the bar date, and such claim is filed in time to permit payment of the claim. i It is within the sole discretion of the receiver whether to consider claims which are filed after the bar date. If you wish to file a claim, please complete and sign the en- closed Proof of Claim Form. If your claim is for more than $500, your claim form must be signed and sworn to before a notary public. If you believe that you did not have notice of the appointment of the receiver in time to file your claim by the bar date, then you must also file a written statement specifying any facts or circumstances demonstrating that you did not have knowledge of the appointment of the Receiver in time to file your claim by the bar date. Please include any documentation support- ing your claim and your lack of knowledge of the appointment of the Receiver. MAILING YOUR CLAIM __________________ Please mail your Proof of Claim form and written statement to: Claims Agent Federal Deposit Insurance Corporation Receiver of Name of Failed Institution __________________________ c/o Federal Deposit Insurance Corporation Address _______ City, State, Zip Code _____________________ HAND-DELIVERING YOUR CLAIM __________________________ You may hand-deliver your Proof of Claim form to the Claims Agent at the address stated herein between 8:00 a.m. and 5:00 p.m. on weekdays (excluding federal holidays). [address for hand-delivery] If you are filing your claim after the bar date, and you wish the receiver to consider your claim, your Proof of Claim form and written statement must be POSTMARKED OR HAND-DELIVERED TO (AND _____________________________________ RECEIVED BY) the Receiver no later than 90 days from the date or ____________ post-mark [sic] of this letter, whichever is later. Upon receipt of your claim, the Receiver has up to 180 days to review and determine whether to allow or disallow your claim. If the Receiver notifies you of the disallowance of your claim, and you wish to seek judicial determination of your claim, you must file a lawsuit (or continue any prior pending lawsuit) on your claim, within 60 days after the later of the date or postmark of __________________________________________________________ any notice of disallowance, in the United States District Court __________________________ for the district in which [name of financial institution]'s principal place of business was located or in the United States ii District Court for the District of Columbia or your claim will be barred. If you do not receive a notice of disallowance of your claim within 180 days of its filing with the Receiver and the Receiver and you have not agreed, in writing, to extend the initial 180 day determination period, your claim will be deemed disallowed, pursuant to 12 U.S.C. 1821(d)(6)(A). If this occurs and you wish to file suit on your claim to obtain judicial determination of your claim, you must file your suit within 60 days after the ________________________ expiration of the 180 day period in the United States District __________________________________ Court for the district in which [name of financial institution]'s principal place of business was located or in the United States District Court for the District of Columbia or your claim will be barred. The statutory provisions governing this claims process are found in section 1821(d)(3)-(13) of Title 12 of the United States Code. If you have any questions please contact [contact name] at [contact phone number]. Sincerely, Claims Agent(s) Federal Deposit Insurance Corporation, as Receiver for [name of financial institution] iii Revised Exhibit 4-F. FDIC-DAS Settlement Procedures Manual Sample Disaffirmance Letter Certified Mail Return Receipt Requested Date Name Address City, State Zip Code Subject: FIN #, Name of Closed Financial Institution City, State - In Receivership Account # (Reference, etc.) CONTRACT DISAFFIRMANCE ______________________ To Whom It May Concern: On [date of appointment] the [name of failed institution], in [city and state), was closed by the [supervisory authority) and the Federal Deposit Insurance Corporation was appointed Receiver ("Receiver"). Under applicable federal law the Receiver is responsible for winding up the affairs of [name of failed insti- tution) as quickly as possible. To achieve this goal the Receiv- er has the right, pursuant to 12 U.S.C. 1821(e), to disaffirm contractual obligations of the failed institution. The purpose of this letter is to advise-you [sic] that the Receiver has elected to disaffirm the above-referenced contract. * Arrangements may be made to pick up any leased equipment by contacting (Name) at (telephone number). If you believe that you have any claim against the Receiver resulting from this action, you may file a proof of claim with the Receiver, using the enclosed form, and the Receiver must receive it on or before [90 days] from the date or post-mark [sic] of this letter, whichever is later. If your claim is for more than $500, your claim form must be signed and sworn to before a Notary Public. YOUR FAILURE TO TIMELY FILE YOUR CLAIM ON OR BEFORE [90 days] FROM THE DATE OR POST-MARK [SIC] OF THIS LETTER, WHICHEVER IS LATER, WILL RESULT IN THE DISALLOWANCE OF YOUR CLAIM. Please mail your Proof of Claim form to: Claims Agent iv Federal Deposit Insurance Corporation Receiver of Name of Failed Institution __________________________ c/o Federal Deposit Insurance Corporation Address _______ City State, Zip Code ____________________ Or you may hand-deliver your Proof of Claim form to the Claims Agent at the address stated herein between 8:00 a.m. and 5:00 p.m. on weekdays (excluding federal holidays). Your Proof of Claim form must be POSTMARKED OR HAND-DELIVERED TO _______________________________ (AND RECEIVED BY) the Receiver on or before the [90 days] from _________________ the date or post-mark [sic] of this letter, whichever is later. Upon receipt of your claim, the Receiver has up to 180 days to review and determine whether to allow or disallow your claim. If the Receiver notifies you of the disallowance of your claim, and you wish to seek a judicial determination of your claim, you must file suit (or continue any prior pending suit) on your claim, within 60 days after the later of the date or postmark of any _________________________________________________________________ notice of disallowance, in the United States District Court for ______________________ the district in which [name of financial institution]'s principal place of business was located or in the United States District Court for the District of Columbia or your claim will be barred. You are further advised that if you do not receive a notice of disallowance of your claim within 180 days of its filing with the Receiver and the Receiver and you have not agreed, in writing, to extend the initial 180 day determination period, your claim will be deemed disallowed, pursuant to 12 U.S.C. 1821(d)(6)(A). If this occurs and you wish to file suit on your claim to obtain de novo adjudication, you must file your suit within 60 days after the expiration of the 180 day period in the United States Dis- trict Court for the district in which [name of financial institu- tion]'s principal place of business was located or in the United States District Court for the District of Columbia or your claim will be barred. The statutory provisions governing this claims process are found in section 1821(d)(3)-(13) of Title 12 of the United States Code. If you have any questions please contact [contact name] at [contact phone number]. Very truly yours, Name Title Federal Deposit Insurance Corporation, as Receiver for [name of financial institution] (Refer to site policy for signature guidelines) v cc: Refer to site policy for copy distribution guidelines. *(Use only if applicable) Revised Exhibit G. FDIC-DAS Settlement Procedures Manual Sample Disaffirmance on Prepaid Contract Letter Certified Mail Return Receipt Requested Date Name Address City, State Zip Code Subject: FIN #, Name of Closed Financial Institution City, State - In Receivership Account # (Reference, etc.) CONTRACT DISAFFIRMANCE AND REQUEST FOR RETURN OF PREPAID FUNDS _____ To Whom It May Concern: On [date of appointment] the [name of failed institution], in [city and state], was closed by the [supervisory authority] and the Federal Deposit Insurance Corporation was appointed Receiver ("Receiver"). Under applicable federal law the Receiver is responsible for winding up the affairs of [name of failed insti- tution] as quickly as possible. To achieve this goal the Receiv- er has the right, pursuant to 12 U.S.C. 1821(e), to disaffirm contractual obligations of the failed institution. The purpose of this letter is to advise you that the Receiver has elected to disaffirm the above-referenced contract. An examination of your prepaid contract revealed that there are unused days remaining from the date of this notice until the ___ expiration of said contract. The number of days multiplied by $ _ per day, would indicate a credit of $ . It is requested that ____ you forward a check made payable to the FDIC, as Receiver of (Name of closed Financial Institution), for the aforementioned credit to: Federal Deposit Insurance Corporation Receiver of Name of Failed Institution __________________________ c/o Federal Deposit Insurance Corporation Address _______ City, State Zip Code ____________________ Attention: [Name] *Arrangements may be made to pick up any leased equipment by contacting (Name) at (telephone number). vi If you believe that you have any claim against the Receiver resulting from this action, you may file a proof of claim with the Receiver, using the enclosed form, and the Receiver must receive it on or before [90 days] from the date or post-mark [sic] of this letter, whichever is later. If your claim is for more than $500, your claim form must be signed and sworn to before a Notary Public. YOUR FAILURE TO TIMELY FILE YOUR CLAIM ON OR BEFORE [90 days] FROM THE DATE OR POST-MARK [sic] OF THIS LETTER, WHICHEVER IS LATER, WILL RESULT IN THE DISALLOWANCE OF YOUR CLAIM. Please mail your Proof of Claim form to: Claims Agent Federal Deposit Insurance Corporation Receiver of Name of Failed Institution __________________________ c/o Federal Deposit Insurance Corporation Address _______ City State, Zip Code ____________________ Or you may hand-deliver your Proof of Claim form to the Claims Agent at the address stated herein between 8:00 a.m. and 5:00 p.m. on weekdays (excluding federal holidays). Your Proof of Claim form must be POSTMARKED OR HAND-DELIVERED TO _______________________________ (AND RECEIVED BY) the Receiver on or before the [90 days] from _________________ the date or post-mark [sic] of this letter, whichever is later. Upon receipt of your claim, the Receiver has up to 180 days to review and determine whether to allow or disallow your claim. If the Receiver notifies you of the disallowance of your claim, and you wish to seek a judicial determination of your claim, you must file suit (or continue any prior pending suit) on your claim, within 60 days after the later of the date or postmark of any _________________________________________________________________ notice of disallowance, in the United States District Court for ______________________ the district in which [name of financial institution]'s principal place of business was located or in the United States District Court for the District of Columbia or your claim will be barred. You are further advised that if you do not receive a notice of disallowance of your claim within 180 days of its filing with the Receiver and the Receiver and you have not agreed, in writing, to extend the initial 180 day determination period, your claim will be deemed disallowed, pursuant to 12 U.S.C. 1821(d)(6)(A). If this occurs and you wish to file suit on your claim to obtain de novo adjudication, you must file your suit within 60 days after the expiration of the 180 day period in the United States Dis- trict Court for the district in which [name of financial institu- tion]'s principal place of business was located or in the United States District Court for the District of Columbia or your claim will be barred. vii The statutory provisions governing this claims process are found in section 1821(d)(3)-(13) of Title 12 of the United States Code. If you have any questions please contact [contact name] at [contact phone number]. Very truly yours Name Title Federal Deposit Insurance Corporation, as Receiver for [name of financial institution] (Refer to site policy for signature guidelines) cc: Refer to site policy for copy distribution guidelines. *(Use only if applicable) *(Use only if applicable) viii